PEOPLE v LARDIE

PEOPLE v HUDICK

Docket Nos. 101640, 102742. Argued March 5, 1996 (Calendar Nos. 8-9). Decided July 9, 1996.

Jash E. Lardie was charged in the Grand Traverse Circuit Court under MCL 257.625(4); MSA 9.2325(4) with three counts of causing death by operating a vehicle while under the influence of intoxicating liquor. The court, Philip R. Rodgers, J., dismissed the charges, concluding that the statute was unconstitutional because it did not require proof either of a mens rea or negligence. The Court of Appeals, Hood, P.J., and Marilyn Kelly and J. L. Martlew, JJ., reversed in an opinion per curiam, concluding that the statute did not codify a common-law offense, but described a strict-liability public-welfare offense that does not require proof of a mens rea (Docket No. 171293). The defendant appeals.

Gerald D. Hudick was charged in the Detroit Recorder's Court with involuntary manslaughter with a motor vehicle and with causing death by operating a vehicle while intoxicated. The court, William Lucas, J., denied the defendant's motion to dismiss the charges, but held the trial in abeyance pending the outcome of the defendant's appeal. The Court of Appeals, Fitzgerald, P J., and Michael J. Kelly and Jansen, JJ., denied leave to appeal (Docket No. 176774). The defendant appeals.

In an opinion by Justice Riley, joined by Chief Justice Brickley, and Justices Levin, Cavanagh, Boyle, and Mallett, the Supreme Court *held*:

MCL 257.625(4); MSA 9.2325(4) requires proof that the defendant had a general intent to drink and drive. It does not impose strict liability, but requires that the culpable mental state have a causal relationship with the harm it seeks to prevent.

1. MCL 257.625(4); MSA 9.2325(4) is designed to deter motorists from deciding to drive while intoxicated. The proscribed culpable act is driving while intoxicated, not voluntary intoxication. There is no basis to conclude that the Legislature attempted to codify the common law when it created the offense. The statute creates its own threshold to determine intoxication and provides its own penalty. Under its plain language, there is no requirement that the peo-

ple prove gross negligence or negligence. In eliminating the issue as a question of fact, the Legislature essentially presumed that driving while intoxicated is gross negligence as a matter of law. In creating the irrebuttable presumption of gross negligence from commission of the wrongful act, the Legislature must have intended that the people prove the driver voluntarily committed the culpable act.

2. The Legislature designed the statute to punish drivers when their intoxicated driving caused the victim's death. Therefore, the elements of the crime that the people must prove are: the defendant was operating a motor vehicle while intoxicated, the defendant voluntarily decided to drive while knowing that an intoxicating liquor or a controlled substance had been consumed and that intoxication might result, and the defendant's driving while intoxicated was a substantial cause of the victim's death.

3. Because MCL 257.625(4); MSA 9.2325(4) does not impose strict liability, any limitations on a strict-liability offense as a matter of substantive due process do not apply. Further, because the offense is statutory, it may not be set aside on the basis of the Supreme Court's authority to modify the common law. Finally, even if examined under common-law principles, this statute does not contradict one of the basic premises of Michigan criminal law that a defendant's culpable mental state have a causal connection to the crime. The Legislature's decision to define the purposeful act of driving while intoxicated as gross negligence does not diminish a defendant's moral culpability. The gravity of the crime depends on whether the defendant's culpable decision results in harm, the very nature of criminal negligence.

Justice WEAVER, concurring, stated that the defendant's manner of driving, and any change in that manner attributable to the defendant's intoxicated state, is not an element of the offense; rather, the causation element requires the people to prove that the death resulted from the defendant's commission of the culpable act prohibited by the statute, which occurs when a person becomes intoxicated, decides to drive, and actually does drive. None of the companion provisions of the statute consider the manner, or the change in manner, in which a vehicle is being operated. Instead, they turn on the driver's condition or status while operating the vehicle. The plain language of the statute clearly indicates that the Legislature intended causation to turn on the fact that the defendant operated the vehicle while intoxicated, rather than the changed manner in which, or how, the defendant operated the vehicle while intoxicated. The people need only prove that the defendant's operation of the vehicle while intoxicated, not the defendant's

uncharacteristic and intoxicated operation, was a cause of the victim's death.

Unlike statutes such as felonious driving and negligent homicide that prohibit similar conduct, the clear language of the OUIL causing death statute contains no reference to the manner in which the defendant operated the vehicle. In enacting this OUIL causing death statute, the Legislature sought to prohibit and punish *all* intoxicated driving that results in a fatality, not just intoxicated driving that is performed in a manner that the people can prove is different from that particular defendant's typical and sober operation of a vehicle in the same situation.

Therefore, Michigan Law imposes two distinct duties on drivers: to drive reasonably and not to drive while intoxicated. There is no such thing as safe, or nonculpable, driving while intoxicated; any intoxicated driving is a violation of the duty all motorists owe to those with whom they share the road—to drive only when not intoxicated, or to suffer the consequences.

*Lardie,* affirmed.

*Hudick,* affirmed.

207 Mich App 615; 525 NW2d 504 (1994) affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Dennis LaBelle,* Prosecuting Attorney, for the people in *Lardie.*

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Research, Training and Appeals, and *Janice Joyce Bartee,* Assistant Prosecuting Attorney, for the people in *Hudick.*

*Running, Wise, Wilson, Ford & Phillips, P.L.C.* (by *J. Bruce Donaldson* and *Douglas J. Donaldson*), for Lardie.

*Barry A. Resnick* and *Darryl Fink* for Hudick.

Amici Curiae:

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Charles D. Hackney* and *Michael E. Moody,* Assistant Attorneys General, for the Prosecuting Attorneys Appellate Service.

*Gregory E. Smith* for Mothers Against Drunk Driving of Michigan.

*Roger L. Conner, Robert Teir,* and *Timothy Burke* for the American Alliance for Rights & Responsibilities.

RILEY, J. In these cases, consolidated on appeal, we are asked to consider the constitutionality of a Michigan statute, MCL 257.625(4); MSA 9.2325(4), that creates a felony with a maximum punishment of fifteen years in prison for a person who drives while intoxicated[1] and, by the operation of the vehicle, causes the death of another. Under this statute, the people must prove that the driver had the general intent to drive while intoxicated and that this wrongful act, i.e., the *intoxicated* driving, must be the cause of the death. Because we conclude that this statute does not violate defendants' due process rights, we affirm the Court of Appeals decision in *People v Lardie,* 207 Mich App 615, 621; 525 NW2d 504 (1994), concluding that the statute was constitutional, and affirm the Court of Appeals order in *People v Hudick,* entered April 3, 1995 (Docket No. 176774), refusing to grant leave to defendant Hudick after the trial court approved the statute's constitutionality.

---

[1] At the time of these incidents, MCL 257.625(4); MSA 9.2325(4) defined this condition as follows: "under the influence of intoxicating liquor or a controlled substance, or a combination of intoxicating liquor and a controlled substance, or with a blood alcohol content of 0.10% or more by weight of alcohol . . . ."

FACTS AND PROCEEDINGS

*PEOPLE v LARDIE*

On May 22, 1993, defendant Lardie drank alcohol and smoked marijuana at a party at his parents' home.[2] Defendant was seventeen years old. He left his home at approximately 1:50 A.M. to give several people from the party a ride to one of their cars. From the physical evidence, defendant apparently drove the car off the paved road and traveled about 130 feet on the shoulder. The car hit a small tree and then, traveling another sixty or seventy feet, struck a larger one, killing the three passengers in the back seat, Jason Stutesman, Kendra Tiernan, and Erinn Tompkins. Lardie had an estimated blood-alcohol level of 0.12 percent or greater at the time of the accident and tested positive for marijuana use. The medical expert testified that taking these two substances together creates a "synergistic type impairment," multiplying the impairment rather than just adding to what each would cause alone.

The people charged Lardie with three counts of causing death by operating a vehicle while under the influence of intoxicating liquor. MCL 257.625(4); MSA 9.2325(4). He moved to dismiss the charges, claiming that the statute violated his right to due process because it did not require proof of either a mens rea or some form of negligence. The circuit court dismissed the counts against Lardie because it concluded that the statute was unconstitutional:

---

[2] At the preliminary examination, James Raggett testified that Lardie had three cans of beer soon after Raggett first arrived at 7:30 P.M., drank three or four shots of whiskey at about 9:45 or 10:00 P.M., had another four or five shots at about 10:30 P.M., and was smoking marijuana at about 10:45 P.M.

[H]olding the drunk driver accountable for incapacitating injury or death, without allowing the jury to examine his mental state, denies him basic due process, eliminates the jury as the arbiter of morally-culpable conduct, deprives the Court of facts necessary to fashion a proportional sentence, and erodes individual freedom. The record before this Court is insufficient to support such a draconian approach to this social problem created by drunk driving.

If OUIL Causing Death, a 15-year felony, is countenanced as consistent with due process requirements of the Michigan and United States Constitutions, then that determination must be made by an appellate court. This trial court sees neither a basis in law or principles of moral culpability, nor evidence of need for easier convictions that would justify holding a drunk driver accountable for a death without allowing the jury to evaluate his mental intent.

The people appealed by right in the Court of Appeals. In an opinion per curiam, the Court of Appeals reversed because it concluded that the statute was constitutional.[3] In so concluding, the Court determined that the statute was not a codification of a common-law offense, but, rather, it characterized the statute as a "strict liability, public welfare offense" without an element requiring the people to prove mens rea.[4]

Defendant Lardie appealed the decision to this Court, which granted leave. The case was argued with *Hudick*.[5]

#### PEOPLE v HUDICK

On March 6, 1994, at approximately 1:30 A.M., on a rainy night, defendant Hudick was driving a truck in

---

[3] *Lardie, supra* at 621.

[4] *Id.* at 620.

[5] 450 Mich 866 (1995).

the right lane of a four-lane highway. William Wien-
claw, a pedestrian, was intoxicated and was standing
in the right lane in the dark when Hudick struck him
with his vehicle and killed him.[6] Hudick was given a
Breathalyzer test at 2:45 A.M., which showed a blood-
alcohol level of 0.13 percent. Another driver, Christa
Holbrook, testified at the preliminary examination
that she was driving on the road at the same time and
did not see Wienclaw until she was about sixty or
seventy feet away from him. She said she was able to
see him because a vehicle turned out of a truck sta-
tion across the street, crossed in front of her, and
shined its lights on him. She crossed into the other
lane nearer the median.[7] Defendant was in the same
lane as Holbrook when he hit Wienclaw.[8]

The people charged Hudick with involuntary man-
slaughter with a motor vehicle and, under MCL
257.625(4); MSA 9.2325(4), with causing death by
operating a vehicle while intoxicated. At the prelimi-
nary examination, defendant argued that the statute
was unconstitutional, claiming that it denied him due
process by eliminating the need for finding a mens
rea. The district court rejected this argument, con-
cluding that the statute was not unconstitutional, and
bound him over for trial on these charges. Hudick
again moved to dismiss the charges in the Detroit
Recorder's Court, but the court denied the motion,

---

[6] The officer described the area where Wienclaw was standing as pro-
viding "poor visibility."

[7] Holbrook confirmed that she would not have seen Wienclaw except
that the car flashed its lights on him.

[8] After Hudick hit Wienclaw, Holbrook turned her car around and
parked in front of the body with the flashers on so that no one else would
hit him. Someone then hit her car.

and held the trial in abeyance pending the outcome of defendant's appeal.

Hudick applied for leave to appeal in the Court of Appeals. After holding the application in abeyance pending the outcome of *Lardie*, the Court denied the application on April 3, 1995. Hudick applied for leave to appeal in this Court, which granted leave to hear this case with *Lardie*.[9]

ANALYSIS

I. MENS REA OF THE CRIME

A

The statute at issue, established by 1991 PA 98, provided at the time of these accidents in pertinent part:

> A person, whether licensed or not, who operates a motor vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state, under the influence of intoxicating liquor or a controlled substance, or a combination of intoxicating liquor and a controlled substance, or with a blood alcohol content of 0.10% or more by weight of alcohol, and by the operation of that motor vehicle causes the death of another person is guilty of a felony, punishable by imprisonment for not more than 15 years, or a fine of not less than $2,500.00 or more than $10,000.00, or both. [MCL 257.625(4); MSA 9.2325(4).][10]

---

[9] 450 Mich 867 (1995).

[10] This statute was amended by 1994 PA 211 (effective November 1, 1994), 1994 PA 448, and 1994 PA 449 (effective May 1, 1995), and now provides in pertinent part:

> A person, whether licensed or not, who operates a motor vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state, in violation of subsection

The same statute, under subsection 6,[11] made it a misdemeanor to drive while intoxicated, establishing a maximum penalty of imprisonment for ninety days or a fine between $100 and $500 for the first offense. Subsection 6 also provided for a one-year maximum sentence in prison and up to a $1,000 fine for a second violation within seven years, and for a five-year maximum sentence and $5,000 fine for a third violation if the two previous violations occurred within ten years.

In order to determine whether a statute imposes strict liability or requires proof of a mens rea, that is, a guilty mind, this Court first examines the statute itself and seeks to determine the Legislature's intent. *People v Quinn*, 440 Mich 178, 185; 487 NW2d 194 (1992). In interpreting a statute in which the Legislature has not expressly included language indicating that fault is a necessary element of a crime, this Court must focus on whether the Legislature nevertheless intended to require some fault as a predicate to finding guilt. *Id*. In this statute, the Legislature did not expressly state that a defendant must have a criminal intent to commit this crime.

Criminal intent is ordinarily an element of a crime even where the crime is created by statute. *People v*

---

(1) [under the influence of intoxicating liquor] or (3) [a person's ability is visibly impaired because of intoxicating liquor], and by the .operation of that motor vehicle causes the death of another person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both.

This amendment does not substantially change the statute for the purposes of our analysis.

[11] Now subsection 7.

*Rice*, 161 Mich 657, 664; 126 NW 981 (1910). Statutes that create strict liability for all of their elements are not favored. *Quinn, supra* at 187. Nevertheless, a state may decide under its police power that certain acts or omissions are to be punished irrespective of the actor's intent. *Id.* at 186-187; *People v Hatinger*, 174 Mich 333, 335; 140 NW 648 (1913). Many of the crimes that impose strict liability have been termed "public welfare regulation." *Quinn, supra* at 187; see also *Morissette v United States*, 342 US 246, 255; 72 S Ct 240; 96 L Ed 288 (1952) (public-welfare offenses). Chief Justice THOMAS COOLEY succinctly described the general rule that a criminal statute requires a mens rea:

> I agree that as a rule there can be no crime without a criminal intent; but this is not by any means a universal rule. One may be guilty of the high crime of manslaughter when his only fault is gross negligence; and there are many other cases where mere neglect may be highly criminal. Many statutes which are in the nature of police regulations . . . impose criminal penalties irrespective of any intent to violate them; the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible. [*People v Roby*, 52 Mich 577, 579; 18 NW 365 (1884).]

Specific intent is defined as a particular criminal intent beyond the act done, whereas general intent is merely the intent to perform the physical act itself. *People v Beaudin*, 417 Mich 570, 573-574; 339 NW2d 461 (1983); *People v Langworthy*, 416 Mich 630, 639, 644; 331 NW2d 171 (1982).[12]   For a strict-liability

---

[12] This Court expressed reservations about this dichotomy in *Langworthy, supra* at 641, but nevertheless decided not to abolish the common-law distinction.

crime, the people need only prove that the act was performed regardless of what the actor knew or did not know. *Quinn, supra* at 188. On this basis, the distinction between a strict-liability crime and a general-intent crime is that, for a general-intent crime, the people must prove that the defendant purposefully or voluntarily performed the wrongful act, whereas, for a strict-liability crime, the people merely need to prove that the defendant performed the wrongful act, irrespective of whether he intended to perform it. Under MCL 257.625(4); MSA 9.2325(4), this distinction is important only in the rare circumstances where a defendant was driving when he honestly did not know he had consumed alcohol, which subsequently caused him to be intoxicated, or where he was forced to drive for some reason despite his intoxication.

B

In both *Lardie* and *Hudick*, the people argue on appeal that the statute did require proof of a mens rea: The people claim that the statute requires proof that the defendant had the general intent to commit the underlying misdemeanor of driving while intoxicated. Where a statute is a codification of the common law and that common-law crime includes a mens rea as an element, this Court will interpret that statute to require a mens rea even if the statute is silent regarding knowledge as a necessary element. See *Quinn, supra* at 185-186. The people in *Lardie* claim that this statute was a codification of the common-law crime of involuntary manslaughter caused by intoxicated driving as articulated by this Court in *People v Townsend*, 214 Mich 267, 273; 183 NW 177

(1921). The Court of Appeals decided that the statute was not a codification of the common law.[13]

In *Townsend,* the defendant was driving while intoxicated and struck and killed a pedestrian. This Court concluded that the information charging the defendant with involuntary manslaughter was sufficiently definite to inform him of the offense on which he would be tried because "[t]he information clearly show[ed] that defendant was engaged in an unlawful and culpably negligent act and that such act directly contributed to the death of [the victim]." *Id.* at 274.[14] In so concluding, this Court reasoned that "[i]t is gross and culpable negligence for a drunken man to guide and operate an automobile upon a public highway, and one doing so and occasioning injuries to

---

[13] See *Lardie, supra* at 618.

[14] In reviewing the information, the Court was relying on the traditional definition of the three theories of involuntary manslaughter:

> To make the information for involuntary manslaughter good it must allege that the accused was [1] in the commission of some unlawful act or [2] negligently doing some act lawful in itself, or [3] by the negligent omission to perform a legal duty, and that death resulted therefrom. [*Id.* at 273.]

See also *People v Beach,* 429 Mich 450, 477; 418 NW2d 861 (1988); *People v Ryczek,* 224 Mich 106, 110; 194 NW 609 (1923) ("Involuntary manslaughter is the killing of another without malice and unintentionally, but [1] in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or [2] in negligently doing some act lawful in itself, or [3] by the negligent omission to perform a legal duty").

The Court in *Townsend, supra* at 273-274, did not make it clear whether it was relying only on the first or on both the first and second theories of involuntary manslaughter in determining that the information was sufficiently specific. In *People v Datema,* 448 Mich 585; 533 NW2d 272 (1995), this Court discussed the continuing vitality of the first theory, known as the misdemeanor-manslaughter rule, under the common law. This Court concluded that an unlawful act committed with an intent to injure or in a grossly negligent manner that proximately causes death was a sufficiently culpable state for involuntary manslaughter. *Id.* at 606.

another, causing death, is guilty of manslaughter." *Id.*
at 273. This is what MCL 257.625(4); MSA 9.2325(4)
provides even though it does not term the crime a
kind of involuntary manslaughter. The Court in *Town-
send, supra* at 280, also approved[15] the jury instruc-
tions given by the trial court, which provided that if
the jury found that the defendant was driving while
intoxicated, and by his intoxicated operation of the
vehicle caused the victim's death, he was guilty of
involuntary manslaughter.[16] The Court reasoned that
the intent to drive while intoxicated was irrelevant
because involuntary manslaughter does not require
proof of a criminal intent.[17]

The Court distinguished the case from an earlier
involuntary-manslaughter case, in which the death
was caused by a person speeding in an automobile,
where the Court had found the instructions to be
erroneous. In *People v Barnes*, 182 Mich 179, 181; 148
NW 400 (1914), the trial court instructed the jury that
it could convict the defendant of involuntary man-
slaughter if it found that he was exceeding the speed

---

[15] In fact, the Court stated that the instructions were "more favorable to
defendant than he was entitled to."

[16] The instructions provided in pertinent part:

> If the respondent operated the automobile while intoxicated and,
> as a direct and natural result thereof, [the victim] received injuries
> from which she afterwards died, the respondent is guilty of man-
> slaughter . . . . [*Id.* at 277.]

[17] It is not the law that one who commits the crime of manslaugh-
ter while under voluntary intoxication and because of such intoxi-
cation, must be sober enough to fully realize that in his intoxicated
condition he might do something to kill another. *No intent is
involved in involuntary manslaughter*, and defendant's intoxica-
tion was the gravamen of his offense and the greater the degree
thereof the more aggravated his offense. [*Id.* at 280 (emphasis
added).]

limit, which was an unlawful act, and thereby killed
the victim. *Id.* at 188-189.[18] This Court reversed
because it held, among other things, that violation of
the speeding law, by itself, was not adequate to estab-
lish involuntary manslaughter, but, instead, the people
must prove gross negligence. *Id.* at 192-193, 196-197,
199.[19] *Townsend* distinguished *Barnes* by stating that
the unlawful act in *Townsend* was malum in se
(wrong in itself), as opposed to being malum prohib-
itum (wrong because prohibited). See *Townsend,
supra* at 280-281.[20]

---

[18] This is the misdemeanor-manslaughter rule.

[19] The Court explained:

> While it is not the law that, in order to convict the respondent, it
> must be made to appear that he knowingly violated the statute,
> because he is bound to know the law, yet there is authority to the
> effect that *he must have been aware, in order to be convicted, that
> he was doing the unlawful act complained of.* [*Id.* at 192 (empha-
> sis added).]

Despite the suggestion that the people be required to prove that the
defendant had knowledge that his action was unlawful, the Court instead
concluded that the people must prove that the defendant was grossly neg-
ligent, not that he intentionally committed an unlawful act:

> We think the better doctrine is that the question of the speed of
> the automobile should have been submitted to the jury, in connec-
> tion with other facts, as bearing upon the question whether he was
> guilty of gross negligence in the manner in which he ran the auto-
> mobile. [*Id.* at 193.]

The Court also explained that gross negligence is "a question for the jury."
*Id.* at 199.

[20] The Court did not clarify whether the unlawful act it was referring to
was the voluntary intoxication or the intoxicated driving. The Court iden-
tified each as malum in se:

> Voluntary drunkenness in a public place was always a misde-
> meanor at common law; and it was always wrong morally and
> legally. It is malum in se. . . . It was unlawful for defendant to
> operate his automobile upon the public highway while he was

Thus, in *Townsend*, unlike *Barnes*, the people did not need to prove gross negligence because it was presumed, as a matter of law, from the malum in se act of driving while intoxicated. Or, on a different theory of common-law involuntary manslaughter, this Court in *Townsend* may have distinguished *Barnes* because the people in *Townsend* established involuntary manslaughter through evidence that the defendant killed another during the commission of an unlawful act when that misdemeanor was malum in se. Under either interpretation of *Townsend*, the statute at issue accomplishes the same basic end because it does not require a showing of gross negligence, but only that the defendant committed the underlying misdemeanor of intoxicated driving. Nevertheless, the statute does not appear to be a codification of the common law for several reasons.

The statute is designed to deter motorists from deciding to drive after they have become intoxicated. Therefore, the culpable act that the Legislature wishes to prevent is the one in which a person becomes intoxicated and then decides to drive. The statute is not designed to prevent "voluntary intoxication." The Court in *Townsend*, *supra* at 272, not only addressed the evil of intoxicated driving, but also focused on the vice of voluntary intoxication, identifying it as a violation of common decency and good morals since the time of Noah. Unlike *Townsend*, the statute unambiguously seeks to punish the harm

---

intoxicated; made unlawful by statute, *and wrong in and of itself* [*malum in se*], and it was criminal carelessness to do so and he is guilty of manslaughter, provided the death of [the victim] was a proximate result of his unlawful act. [*Id.* at 273 (emphasis added).]

caused by intoxicated driving, not voluntary intoxication.

Moreover, the statute at issue creates a threshold of 0.10 percent alcohol content, above which the defendant is considered to be in the same category as someone "under the influence of intoxicating liquor." This aspect of the statute does not come from the common law, but is a statutory creation.

Furthermore, the Legislature created its own statutory penalty for a violation of this statute. The statute does not adopt the manslaughter penalty provided by MCL 750.321; MSA 28.553.[21] The Legislature would likely have referred to the manslaughter statute for the penalty for the crime if it wished to codify the crime from the common law.

Finally, there is no basis from the legislative history of this statute to conclude that the Legislature was attempting to codify *Townsend*, or the common law more generally, when it created this criminal offense. Consequently, we conclude that this statute was not codified from the common law, and so cannot look to it alone to determine if there is a mens rea requirement.

C

Where the offense in question does not codify the common law and omits reference to the element of intent, this Court will examine the Legislature's intent in enacting the legislation to determine whether there is a mens rea requirement. *Quinn, supra* at 186. Before the passage of 1991 PA 98, the people could

---

[21] The penalty for manslaughter was codified by MCL 750.321; MSA 28.553, but the definition of manslaughter is left to the common law. *Datema,* n 14 *supra* at 593.

charge an intoxicated driver who caused the death of another with involuntary manslaughter, as defined by the common law, the lesser charge of negligent homicide under MCL 750.324; MSA 28.556,[22] or, of course, murder if warranted by the facts.[23] By statute, manslaughter (either voluntary or involuntary) is a felony that carries a maximum penalty of fifteen years imprisonment, or a fine of $7,500. MCL 750.321; MSA 28.553. Negligent homicide is a misdemeanor punishable by two years in prison, or by a fine of $2,000. MCL 750.324; MSA 28.556.[24]

For either of these crimes, the Legislature likely believed that under Michigan law the people must prove some form of negligence. For negligent homicide, the people must prove that the driver was negligent or driving at an unreasonable speed. See *People v Paulen*, 327 Mich 94, 99; 41 NW2d 488 (1950). See also CJI2d 16.14.[25] For involuntary manslaughter, the

---

[22] Section 324 provides:

Any person who, by the operation of any vehicle upon any highway or upon any other property, public or private, at an immoderate rate of speed or in a careless, reckless or negligent manner, but not wilfully or wantonly, shall cause the death of another, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than 2 years or by a fine of not more than $2,000.00, or by both such fine and imprisonment.

[23] The statute does not limit the ability of the people to charge an intoxicated driver with any of these crimes.

[24] See also MCL 750.325; MSA 28.557 (defining negligent homicide as a lesser included offense of manslaughter committed in the operation of a vehicle).

[25] The standard jury instruction for negligent homicide identifies the elements of negligent homicide as follows:

(1) [The defendant is charged with the crime of / You may also consider the lesser charge of] negligent homicide. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

Court of Appeals held in 1987 that the people must prove that the driver was grossly negligent. See *People v Thinel*, 160 Mich App 450, 455, 458; 408 NW2d 474 (1987),[26] vacated on other grounds 429 Mich 859, 859-860; 412 NW2d 923 (1987).[27] See also CJI2d 16.12.[28]

---

(2) First, that the defendant was operating a motor vehicle on or about [*date*], at [*place*].

(3) Second, that the defendant was operating the vehicle [at an unreasonable speed / in a *negligent* manner].

(4) Third, that the defendant's negligence was a substantial cause of an accident resulting in injuries to [*name deceased*].

(5) Fourth, that those injuries caused the death of [*name deceased*]. [Emphasis added.]

[26] The Court of Appeals held in *Thinel, supra* at 455:

> The trial court's jury instruction on gross negligence was error which requires reversal. The trial judge told the jury in this instruction that it was gross negligence to operate a motor vehicle while intoxicated. Despite the fact that the evidence of defendant's gross and culpable negligence was overwhelming, *the determination of that fact should have been left to the jury.* The failure to permit the jury to make the critical determination as to whether defendant's conduct amounted to gross negligence requires reversal and a new trial. [Emphasis added.]

The Court of Appeals noted that *Townsend, supra*, had held that driving while intoxicated was gross negligence as a matter of law, but concluded that after *People v Reed*, 393 Mich 342; 224 NW2d 867 (1975), all essential elements of a criminal offense must be determined by the jury as an issue of fact. *Thinel, supra* at 458.

[27] [T]he judgment of the Court of Appeals is vacated and the case is remanded to that Court for consideration whether the instructional error in the case was harmless beyond a reasonable doubt and, if the Court of Appeals finds the instructional error to be harmless, for consideration of the defendant's remaining issues. An instruction that removes from the jury the right to consider freely an element of the crime can be a harmless error. [Citations omitted.]

[28] The standard jury instruction identifies the elements of involuntary manslaughter with a motor vehicle as follows:

(1) The defendant is charged with the crime of involuntary manslaughter in operating his motor vehicle in such a manner as to

Under the plain language of MCL 257.625(4); MSA 9.2325(4), there is no requirement that the people prove gross negligence or negligence in order to prosecute someone for causing another person's death by operating a vehicle while intoxicated. Thus, in light of *Thinel, supra,* and the standard jury instructions, the Legislature must have intended to eliminate this element as a requirement when it enacted the statute.

D

We must then determine whether the Legislature intended to make this a strict-liability crime, not requiring proof of any fault other than the act of driving while intoxicated, when it eliminated the element of gross negligence. In interpreting this statute, the Court of Appeals in *Lardie, supra* at 618, concluded that the Legislature did not require the people to prove either general or specific intent, but imposed a penalty as a matter of strict liability. The Court of Appeals reasoned that the Legislature intended to create a strict-liability offense because it omitted any reference to criminal intent when it amended the statute.[29]

---

cause the death of [*name deceased*]. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

(2) First, that the defendant was operating his motor vehicle on or about [*date*], at [*place*].

(3) Second, that he operated the vehicle in a *grossly negligent* manner.

(4) Third, that the defendant's gross negligence was a substantial cause of an accident resulting in injuries to [*name deceased*].

(5) Fourth, that such injuries caused the death of [*name deceased*]. [Emphasis added.]

[29] The Court held:

This Court examines the legislative history of a statute to determine whether the Legislature intended to eliminate the requirement that the people prove any element of fault. *Quinn, supra* at 190-191.[30] In

---

In *People v Crawford*, 187 Mich App 344, 349; 467 NW2d 818 (1991), this Court stated that the offense of OUIL, MCL 257.625; MSA 9.2325, is proved without regard to the defendant's motive or intent. The crime of OUIL causing death contains the same elements as OUIL with the only additional element being the aggravated circumstance of death resulting from the prohibited conduct. Therefore, by extension, we conclude that intent is likewise irrelevant to prove the crime of OUIL causing death.

Additionally, we note that the OUIL statute is not a codification of a common-law offense. See *People v Townsend*, 214 Mich 267, 273; 183 NW 177 (1921) (it is unlawful by statute to operate an automobile upon a public highway while in a state of inebriation). Thus, this Court is not inclined to read a mens rea requirement into the statute. *Quinn, supra*. This is especially true because, if the Legislature wanted to add specific or general intent as an element, knowing that the predecessor statute had been construed as a strict liability crime, it would have specifically done so. See *People v Langworthy*, 416 Mich 630, 644; 331 NW2d 171 (1982). [*Lardie, supra* at 618; see also *People v Trotter*, 209 Mich App 244, 248; 530 NW2d 516 (1995).]

The Court in *Lardie* rightly noted that the Court of Appeals had previously concluded that the misdemeanor of driving while intoxicated may be "proved without regard to the defendant's motive or intent" and was a "status crime which focuses only on the fact that the defendant operates an automobile while he is intoxicated." *Crawford, supra* at 349-350, citing *People v Raisanen*, 114 Mich App 840, 844; 319 NW2d 693 (1982). The standard jury instructions for driving while intoxicated, CJI2d 15.2 and 15.3, also do not include a requirement that the people prove that the defendant intended to drive while intoxicated. The commentary to CJI2d 15.3, however, notes that under *Raisanen, supra*, "[o]perating a motor vehicle under the influence of intoxicating liquor is a *general intent crime*." (Emphasis added.)

The amici curiae briefs urge us to conclude that this is a strict-liability offense.

[30] We noted in *Quinn* that there were several factors that the Court may wish to consider:

(1) the statute's legislative history or its title, (2) guidance to interpretation provided by other statutes, (3) the severity of the punishment provided, (4) the severity of potential harm to the pub-

enacting 1991 PA 98, the Legislature must have been aware that under common-law involuntary manslaughter, gross negligence is equivalent to a criminal intent. *People v Datema*, 448 Mich 585, 604; 533 NW2d 272 (1995), citing *Barnes, supra* at 198. In eliminating the issue of gross negligence as a question of fact for the jury, the Legislature essentially has presumed that driving while intoxicated is gross negligence as a matter of law. Once the people prove that a defendant was driving while intoxicated, the people need not prove the further point that the defendant's driving was grossly negligent.

In eliminating this requirement, the Legislature likely wished to require proof of a criminal intent for the criminal act of intoxicated driving. The presumption of gross negligence from the act itself is only reasonable if the defendant (1) *voluntarily* decided to drive and (2) drove *knowing* that he had consumed an intoxicating liquor or a controlled substance and, therefore, knowing he could be intoxicated.[31] Under common-law involuntary manslaughter, the people must prove three elements in order to establish gross negligence to a jury:

(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.

---

lic, (5) the opportunity to ascertain the true facts, and (6) the difficulty encountered by prosecuting officials in proving a mental state. [*Id.* at 190-191, n 14, citing LaFave & Scott, Criminal Law (2d ed), § 3.8, pp 244-245.]

[31] The wrong the Legislature sought to prevent is driving after consuming an intoxicating liquor or a controlled substance, regardless of whether the person subjectively believed he was intoxicated. Consequently, we read the statute to prohibit a defendant from claiming that he had consumed an intoxicating liquor or a controlled substance but did not think he was intoxicated.

(2) Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.

(3) The omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. [*People v Orr*, 243 Mich 300, 307; 220 NW 777 (1928).]

Under the statute at issue, the Legislature's determination that as a matter of law the act of driving while intoxicated is gross negligence would only satisfy this definition if the driver voluntarily chose to drive with the knowledge that he had consumed alcohol.

The Legislature may also have had reservations about the ability of the people to prove the third prong of the *Orr* test because a defendant's irresponsible decision to drive while intoxicated is not necessarily "*likely* to prove disastrous." (Emphasis added.) See CJI2d 16.18(4).[32] The Legislature reasonably may have decided that the voluntary act of driving while intoxicated is grossly·negligent because it "shows a culpable indifference to the safety of others . . . ." See *People v Campbell*, 237 Mich 424, 428; 212 NW 97 (1927).

Moreover, in creating this irrebuttable presumption of gross negligence from the wrongful act, the Legislature intended to deter drunk driving and, therefore, must have intended that the people prove that the driver voluntarily, i.e., "*willing[ly]*," decided to com-

---

[32] This instruction provides in part: "Third, that the defendant failed to use ordinary care to prevent injuring another when, to a reasonable person, it must have been apparent that the result was *likely* to be serious injury." (Emphasis added.)

mit this culpable act.[33] Otherwise, the statute would impose a penalty on a driver who was forced to drive while intoxicated or honestly did not know that he had drunk alcohol before driving.[34] Such a result would not further the Legislature's intent to deter this gravely dangerous conduct because, in those circumstances, the act would not be willingly chosen.[35]

Furthermore, this crime does not fit the definition of a public-welfare strict-liability offense despite the

---

[33] The legislative analysis of 1991 PA 98 provided in part in its section on arguments in support of the amendment:

[T]oo many drinkers are irresponsible drivers who are *willing* to risk current penalties to get behind the wheel. *The proposed legislation will deter those drivers* by closing technical loopholes in the law, promising swift and sure punishment for drinking drivers, and hiking penalties for troublesome violators[.] [House Legislative Analysis, HB 4827-4828 and SB 314-315,   August 14, 1991, p 5 (emphasis added).]

[34] The Court in *Lardie, supra* at 620, drew the opposite conclusion:

We believe that requiring the prosecutor to prove intent in situations such as the instant one would frustrate the purpose of the statute. Further, it is clear that the Legislature correctly placed the burden on would-be intoxicated drivers as the people in the best position to avoid the potential harm associated with driving while intoxicated. Therefore, in order to preserve the legislative intent underlying the enactment, we are constrained to sustain the OUIL causing death statute as a strict liability, public welfare offense.

This analysis ignores the distinction between general- and specific-intent crimes. If the people were required to prove that a defendant had the intent to place others at risk when he decided to drive while intoxicated, i.e., to prove specific intent, this reasoning would apply. However, the Legislature's purpose of deterring people from driving while intoxicated is only advanced when the defendant had the general intent to perform the wrongful act.

[35] Admittedly, a situation in which someone is "forced" to drive while intoxicated or decides to drive while intoxicated even though he was honestly unaware that he had drunk alcohol will only arise in unusual circumstances. However, by the same token, this reality will make it relatively easy for the people to prove that someone who is driving while intoxicated did so voluntarily and knowing that he had consumed alcohol.

opposite conclusion of the Court of Appeals in
*Lardie, supra* at 620. Generally, such statutes are
designed to protect the public welfare by placing the
burden of protecting society on a person " 'otherwise
innocent but standing in responsible relation to public
danger.' " *Quinn, supra* at 187, quoting *United States
v Dotterweich*, 320 US 277, 281; 64 S Ct 134; 88 L Ed
48 (1943).[36] The United States Supreme Court
explained that these regulatory statutes do not
require a criminal intent because the accused gener-
ally is in a position to prevent the harm. *Morissette,
supra* at 256.[37]

In *Quinn, supra* at 187, this Court explained that a
statute creating a misdemeanor with a maximum two-

---

[36] See also *Staples v United States*, 511 US 600, 607; 114 S Ct 1793; 128
L Ed 2d 608 (1994), quoting *Dotterweich, supra* at 281, and *United States
v Balint*, 258 US 250, 254; 42 S Ct 301; 66 L Ed 604 (1922).

> [W]e have reasoned that as long as a defendant knows that he is
> dealing with a dangerous device of a character that places him "in
> responsible relation to a public danger," . . . he should be alerted
> to the probability of strict regulation, and we have assumed that in
> such cases Congress intended to place the burden on the defendant
> to "ascertain at his peril whether [his conduct] comes within the
> inhibition of the statute."

The United States Supreme Court also noted that it interpreted public-
welfare offenses to require at least "that the defendant know that he is
dealing with some dangerous or deleterious substance," and thereby the
Court "avoid[s] construing criminal statutes to impose a rigorous form of
strict liability." *Id.* at 607, n 3.

[37] The Supreme Court cited a law review article, Sayre, *Public welfare
offenses*, 33 Col L R 55, 73, 84 (1933), listing the general categories of
public-welfare offenses:

> (1) illegal sales of intoxicating liquor, (2) sales of impure or
> adulterated food or drugs, (3) sales of misbranded articles, (4) vio-
> lations of antinarcotic Acts, (5) criminal nuisances, (6) violations of
> traffic regulations, (7) violations of motor-vehicle laws, and (8) vio-
> lations of general police regulations, passed for the safety, health
> or well-being of the community. [*Morissette, supra* at 262, n 20.]

year sentence for transporting a loaded firearm was a public-welfare regulation because "[t]he statute does not punish crimes mala in se, but, rather, regulates conduct under the state's police power to promote the social good . . . ."[38] In contrast, the legislation in the present case seeks not to regulate the conduct of a *person who is otherwise innocent*, but punishes a person's gravely irresponsible act of operating a vehicle while intoxicated when that act causes another person's death. As this Court explained in *Townsend*, *supra* at 273, such conduct is malum in se.[39]

Also, the penalties for public-welfare strict-liability crimes generally are "relatively small" and do no "grave damage to an offender's reputation." *Staples v United States*, 511 US 600, 617-618; 114 S Ct 1793; 128 L Ed 2d 608 (1994), quoting *Morissette*, *supra* at 256.[40] Whereas, the penalties under this statute are

---

[38] See also *Balint*, n 36 *supra* at 252 ("Many instances of [strict-liability statutes] are to be found in regulatory measures in the exercise of what is called the police power where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes as in cases of mala in se").

[39] See n 20.

[40] We note that the strict-liability crime of statutory rape, as a part of American common law, is not a public-welfare offense. See *Garnett v State*, 332 Md 571, 579; 632 A2d 797 (1993); *State v Guest*, 583 P2d 836, 838 (Alas, 1978). By statute, under Michigan law, a person is guilty of first-degree criminal sexual conduct if he engages in sexual penetration with a person under thirteen years of age, and is guilty of third-degree criminal sexual conduct if the victim is thirteen years old or older and under sixteen years old. The first crime is a felony punishable by a maximum term of life imprisonment and the latter crime is a felony punishable by fifteen years in prison. MCL 750.520b; MSA 28.788(2), MCL 750.520d; MSA 28.788(4). This Court rejected the reasonable mistake of age defense to third-degree criminal sexual conduct, concluding instead that this was a strict-liability offense. See *People v Cash*, 419 Mich 230, 240-246; 351 NW2d 822 (1984). The United States Supreme Court in *Morissette*, *supra* at 251, n 8, explained that sex offenses such as statutory rape are exceptions to the general rule from the common law that every criminal offense requires a "vicious will."

relatively severe and are designed to harm a person's reputation, in order thereby to operate as a deterrent for others. Thus, we would not characterize this statute, creating a fifteen-year felony, as a public-welfare offense. See *Staples, supra* at 617-618.

Consequently, consistent with the Legislature's decision to presume gross negligence as a matter of law and its desire to deter intoxicated driving, the Legislature must reasonably have intended that the people prove a mens rea by demonstrating that the defendant purposefully drove while intoxicated or, in other words, that he had the general intent to perform the wrongful act.[41] Where a statute requires a "criminal mind" for some, but not all, of the elements of the crime, the statute does not impose strict liability. *Quinn, supra* at 187, citing *United States v Freed*, 401 US 601; 91 S Ct 1112; 28 L Ed 2d 356 (1971). Because the statute requires proof of a mens rea, it does not impose strict liability. Rather, we conclude that the statute requires the people to prove that a defendant, who kills someone by driving while intoxicated, acted knowingly in consuming an intoxicating liquor or a controlled substance, and acted voluntarily in deciding to drive after such consumption.

## II. CAUSATION

The statute provides that a defendant is guilty of this crime when, "by the operation" of his vehicle while under the influence of intoxicating liquor, he "causes the death of another person." MCL 257.625(4); MSA 9.2325(4). The Legislature passed 1991 PA 98 in order to reduce the number of alcohol-

---

[41] Of course, voluntary intoxication is no defense to a general-intent crime. *Langworthy, supra* at 638.

related traffic fatalities.[42] The Legislature sought to deter drivers who are "willing to risk current penalties" from drinking and driving.[43] In seeking to reduce fatalities by deterring drunken driving, the statute must have been designed to punish drivers when their *drunken* driving caused another's death.[44] Otherwise, the statute would impose a penalty on a driver even when his wrongful decision to drive while intoxicated had no bearing on the death that resulted. Such an interpretation of the statute would produce an absurd result by divorcing the defendant's fault from the resulting injury.[45] We seek to avoid such an interpretation. See *Jennings v Southwood*, 446 Mich 125, 141-142; 521 NW2d 230 (1994).[46]

---

[42] The legislative analysis included a description of the apparent problem, which provided in pertinent part:

> [W]hile various reports suggest that the incidence of drunk driving has declined in recent years, as has the traffic death rate, the proportion of fatal accidents in which alcohol was involved has held steady. In other words, alcohol has continued to be involved in roughly half of all fatal traffic accidents in the state (alcohol "involvement" means that someone in the accident, not necessarily a driver, had been drinking). [House Legislative Analysis, HB 4827-4828 and SB 314-315, August 14, 1991, p 1.]

[43] See n 33.

[44] This interpretation is also consistent with common-law involuntary manslaughter, which requires that the unlawful act be the proximate cause of the injury. See *Townsend, supra* at 275 ("The information sufficiently charges that the unlawful act was the proximate cause of the accident and avers a direct relation between the unlawful act of operating the automobile while intoxicated and the accident"); *Barnes, supra* at 196-197, citing *People v Rockwell*, 39 Mich 503 (1878).

[45] See 1 LaFave & Scott, Substantive Criminal Law, § 3.12(a), pp 391-392 ("What is missing is the necessary causal connection between the [reckless] conduct and the result of [that] conduct; and causal connection requires something more than mere coincidence as to time and place").

[46] The concurrence suggests that the statute unambiguously provides that a driver is guilty of this crime when his mere operation of the vehicle is the cause in fact of the victim's death regardless of whether his intoxication played a causal role. See *post* at 273. Contrary to the concurrence's

Moreover, this interpretation would not directly further the Legislature's purpose of reducing fatalities because there is no reason to penalize an intoxicated driver with a fifteen-year felony when there is an accident resulting in a fatality if that driver, even if not intoxicated, would still have been the cause in fact of the victim's death. There would be no reason because it would not prevent that fatality from occurring again. Therefore, in proving causation, the people must establish that the particular defendant's decision to drive while intoxicated produced a change in that driver's operation of the vehicle that caused the death of the victim.[47] In this way, the statute does not impose a severe penalty when the injury was unavoidable for that particular driver (regardless of whether he was intoxicated), because the statute ensures that the wrongful decision caused the death in the accident.[48]

---

suggestion, the statute may easily support the interpretation that the driver's *intoxication*, rather than the mere operation of the vehicle, must be the cause of the victim's death.

[47] It is the *change* that such intoxication produces, and whether it caused the death, which is the focus of this element of the crime. The concurrence argues that this conclusion "rewards" the careless or unsafe driver because the people will have a more difficult time proving causation against such a driver. *Post* at 275, n 13. This is misleading. Under this particular statute, the Legislature punishes drivers when their *drunken* driving causes the death of another. However, the people may also charge a defendant with involuntary manslaughter, at the same time in charging this crime, if there is a serious question about whether the driver's careless or unsafe driving, somehow unrelated to his intoxication, was the cause of the victim's death.

[48] This conclusion comports with the common-law understanding of the relationship between the wrong and the injury. See *People v Kneip*, 449 Mich 83, 102; 534 NW2d 675 (1995) ("The exacting rules of criminal causation dictate that a driver is not in fact or law the cause of a deceased's death unless the proofs are such that a jury could find beyond a reasonable doubt that the defendant could have avoided the accident").

On the basis of this analysis, the elements of the crime that the people would be required to prove are similar to those for involuntary manslaughter except that the people would not have to prove gross negligence. Hence, the people must prove that (1) the defendant was operating his motor vehicle while he was intoxicated,[49] (2) that he voluntarily decided to drive knowing that he had consumed alcohol and might be intoxicated,[50] and (3) that the defendant's intoxicated driving was a substantial cause of the vic-

---

The concurrence claims that the victim's death is "always avoidable" because the driver could have decided not to drive at all. *Post* at 273, n 11. However, this interpretation eliminates any substantial connection between the fault and the resulting death. The Legislature seeks to prohibit intoxicated driving because of the danger that such driving poses to the safety of the community. The concurrence would allow the statute to impose this fifteen-year penalty when that fault played no role in causing the accident, permitting the driver's fault to be merely coincidental with the victim's death.

We agree with the concurrence that "[t]he Legislature drafted the statute so that the intoxicated driver would be responsible for *all* consequences that flow from his decision to drive while intoxicated." *Post* at 276. We further conclude, however, that a victim's death was one of the consequences of a driver's decision to drive while intoxicated *only* when the driver's intoxication was a cause of that death. This is the crime that merits swift and sure punishment, not the unavoidable killing of another with a vehicle.

[49] After its revision in 1994 PA 449, see n 10, this statute now provides that a person violates this statute if, under subsection 1(a), the person is driving while "under the influence of intoxicating liquor or a controlled substance, or a combination of intoxicating liquor and a controlled substance," or, under subsection 1(b), the person has "an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine," or, under subsection 3, "due to the consumption of an intoxicating liquor, a controlled substance, or a combination of an intoxicating liquor and a controlled substance, the person's ability to operate the vehicle is visibly impaired." MCL 257.625(1)(a), (b), and (3) ; MSA 9.2325(1)(a), (b), and (3). See n 1 for the relevant statutory language before the revisions in 1994.

[50] See n 31.

tim's death.[51] Cf. CJI2d 16.12 (Involuntary Manslaughter with Motor Vehicle), quoted in n 28.

### III. DUE PROCESS—SUFFICIENCY OF MORAL CULPABILITY

#### A

Defendant Lardie argues that the general intent to commit a misdemeanor (the mens rea) cannot be transformed into the bad intent sufficient for due process purposes to justify a fifteen-year felony, unless the people demonstrate that this culpable decision (deciding to drive the vehicle while intoxicated) was the cause of the victim's death.

The United States Supreme Court has recognized that there are due process limitations on the state's police power to impose a penalty for a violation of a law when a person charged with the crime did not have a criminal intent. See *Lambert v California*, 355 US 225, 228; 78 S Ct 240; 2 L Ed 2d 228 (1957) (the defendant, a convicted felon, violated a Los Angeles ordinance requiring felons to register with the city when she failed to do so within five days of arriving because she had no actual knowledge of the provision).[52] However, as we noted in part I, this is not a strict-liability statute. Therefore, any limitations

---

[51] This Court held that a defendant's conduct need only be "a" proximate cause of death for a defendant charged with common-law involuntary manslaughter with a motor vehicle. See *Kneip*, n 48 *supra* at 96. The concurrence suggests that our interpretation of the people's duty to prove causation is "demanding" and "onerous." See *post* at 272, 275, n 13. The concurrence exaggerates the people's burden in proving causation. The people must only demonstrate that the defendant's prohibited conduct, i.e., his culpable decision to drive while intoxicated, substantially contributed to the resulting death.

[52] The extent of this due process limitation is not clear. See *United States v Cordoba-Hincapie*, 825 F Supp 485, 515-518 (ED NY, 1993); 1 LaFave & Scott, Substantive Criminal Law, § 2.12, pp 218-221, § 3.8, pp 346-347.

articulated by the United States Supreme Court for a
strict-liability offense as a matter of substantive due
process do not apply to this statute. See also *Stanley
v Turner*, 6 F3d 399, 401-402 (CA 6, 1993).[53]

B

Defendant also relies on this Court's analysis in
*Datema, supra* at 602, and in *People v Aaron*, 409
Mich 672; 299 NW2d 304 (1980),  in arguing that the
statute violates due process.

---

[53] The court in *Stanley* was addressing an Ohio statute defining involun-
tary manslaughter as causing death during the commission of a mis-
demeanor. There was no mens rea requirement. In that case, the defend-
ant sped past another car, crossing over the double yellow line and
exceeding the speed limit. He then collided with an oncoming car, killing
a passenger in that vehicle. The defendant was charged with and con-
victed of involuntary manslaughter on the basis that he had possibly com-
mitted four separate misdemeanors, including speeding, reckless opera-
tion of a motor vehicle, operating a vehicle without reasonable control,
and crossing a double yellow line. These underlying misdemeanors were
safety statutes that were devoid of any element of criminal intent. *Id.* at
403. The defendant was sentenced to two to ten years in prison. In evalu-
ating whether this statute violated due process under the analysis of *Mor-
issette* among other cases, the court concluded:

> [W]here a criminal statute prohibits and punishes conduct not
> innocent or innocuous in itself, the criminal intent element may be
> dispensed with if the criminal statute is designed for the protection
> of the public health and safety and if it has no common law back-
> ground that included a particular criminal intent. Because citizens
> are presumed to know the ordinary traffic safety laws and that vio-
> lating them is dangerous and wrong, Ohio's involuntary manslaugh-
> ter statute, as applied in this case, is based on the obviously wrong-
> ful and blameworthy conduct of violating traffic safety laws.
> Accordingly, it is not the kind of statute that requires a formally
> stated criminal intent element in order to comport with the Due
> Process Clause. [*Stanley, supra* at 404.]

Thus, if this is true for a strict-liability offense, it must also be true of this
offense, which requires the people to prove a mens rea, the general intent
to commit the unlawful act of driving while intoxicated.

However, the Court in *Datema, supra* at 601, and in *Aaron, supra* at 721-729, was reviewing the question whether this Court should modify the common law by examining its treatment of the relationship between criminal intent and criminal liability. In those cases, the Court was not determining whether the common-law misdemeanor-manslaughter rule (*Datema*) or the common-law felony-murder rule (*Aaron*) violated the Due Process Clauses of the United States or Michigan Constitution. Rather, the Court was exercising its role in developing the common law. See *Aaron, supra* at 733. As the Court in *Aaron* noted, " 'it is for this Court to decide whether a common-law rule shall be retained *unless* the Legislature states a rule that is inconsistent with or precludes a change in the common-law rule.' " *Id.* at 723, n 112, quoting *Gruskin v Fisher*, 405 Mich 51, 58; 273 NW2d 893 (1979) (emphasis added). In the present case, this Court is reviewing a statute, and, therefore, we may not set aside the statute on due process grounds on the basis of this Court's authority to modify the common law.

C

Moreover, even if the analyses of these cases were relevant to examining whether this statute violated defendants' due process rights, we do not believe that this statutory crime is inconsistent with the principles found in the common law as articulated by *Aaron* and *Datema*.[54]

---

[54] We do not intend to suggest that these common-law cases establish the proper framework for evaluating a criminal statute with a mens rea requirement under due process. In *Aaron* and *Datema*, we reexamined the common-law definitions of murder and manslaughter under our authority in developing the common law, abrogating felony-murder but

In *Aaron, supra* at 733, this Court struck down the common-law felony-murder rule because it violated "the basic premise of individual moral culpability upon which our criminal law is based" by allowing proof of an intent to commit a felony as adequate to establish a defendant's liability for murder. In its place, the Court held that under common law, in order to prove that a defendant committed murder, the people must demonstrate that he either intended to kill or to inflict great bodily harm, or acted with a wanton and wilful disregard of the likelihood that the natural tendency of his conduct would be to cause death or great bodily harm. *Id.* The Court noted that the first-degree murder statute, MCL 750.316; MSA 25.548, would nevertheless continue to elevate murder to first-degree murder if the murder was committed during the perpetration or attempted perpetration of certain enumerated crimes. *Aaron* at 733-734.

In *Datema, supra* at 601-602, this Court examined the misdemeanor-manslaughter rule, which elevates a misdemeanor to involuntary manslaughter if that wrongful act causes another's death, in a case in which a defendant committed an assault and battery that unexpectedly resulted in the death of the victim. This Court upheld the common-law misdemeanor-manslaughter doctrine under the facts of the case because (1) "[the] rule requires a jury finding beyond

---

retaining a certain kind of misdemeanor-manslaughter rule. In doing so, we required that the common-law definitions meet the requirements of "individual moral culpability" found in the criminal law, see *Aaron, supra* at 733, which we conclude is at least as stringent as the standard of basic fairness that might be required by substantive due process. See *Cordoba,* n 52 *supra.* Consequently, by concluding that this statute is consistent with Michigan common-law principles, we avoid determining what the due process limitations are, if any, on a criminal statute that requires proof of a mens rea.

a reasonable doubt that there was a direct and proximate connection between the underlying crime and the resulting death" and (2) assault and battery, the underlying misdemeanor, was a specific-intent crime in which the people must prove that the defendant had the intent to injure.[55]

The statute at issue, like *Datema, supra* at 602, requires that there be a "causal relationship" between the defendant's culpable state of mind, i.e., intentionally driving while intoxicated, and the resulting death. See part II.

In the present cases, however, the underlying crime, driving while intoxicated, is not a specific-intent crime. Nevertheless, the crime is malum in se as this Court explained in *Townsend, supra* at 273. The Court in *Datema* specifically decided not to address this question for the common law in which the underlying crime that caused the death was malum in se, but did not involve an intent to injure:

> We do not resolve whether an act that was malum in se at common law but that does not involve the intent to injure can furnish the mens rea for involuntary manslaughter.
>
> . . . Unanticipated and unusual situations arising from death caused by the commission of offenses defined as malum in se at the common law but that do not require an intent to injure must be dealt with case by case. [*Id.* at 607-608.]

---

[55] In *Datema, supra* at 602, we noted that in *People v Johnson*, 407 Mich 196, 210; 284 NW2d 718 (1979), this Court requires the people to prove that the defendant either intended to injure or intended to put the victim in reasonable fear or apprehension of an immediate battery when demonstrating that he committed an assault and battery.

The statutory crime at issue in the present cases is analogous to common-law involuntary manslaughter in two different respects. Under the statute, a defendant is criminally responsible for causing death (1) by committing an unlawful act (driving while intoxicated) or (2) by performing a lawful act (driving) with gross negligence (presumed as a matter of law by the statute when a person drives while intoxicated). See *Datema, supra* at 595-596, quoting *People v Ryczek*, 224 Mich 106, 110; 194 NW 609 (1923), for the general theories of involuntary manslaughter.[56] The crime can analogously fit into either theory of common-law involuntary manslaughter. These theories are not mutually exclusive. *Datema, supra* at 596. Because the nature of the statute is to impose criminal liability on a defendant for the culpably (grossly) negligent decision to drive while intoxicated, which is an unlawful act, the statute includes both these theories of common-law involuntary manslaughter.

In comparing this statute to gross-negligence involuntary manslaughter under the common law, we conclude that this statute does not conflict with the basic premise of "individual moral culpability" from the common law articulated in *Aaron* even though it imposes a fifteen-year felony for an act that would only lead to a ninety-day misdemeanor (for a first-time offense) if it did not cause the death of another. The only difference between causing death by operating a vehicle while intoxicated and the crime of involuntary manslaughter with a motor vehicle is that under the common law the people must prove gross negligence, whereas under the statute the people

---

[56] See also n 14.

must prove that the defendant voluntarily drove, knowing that he might be intoxicated. The Legislature's decision to define the purposeful act of driving while intoxicated as gross negligence does not diminish a defendant's moral culpability. The moral culpability for the person who decides to drink and drive, where any reasonable person must recognize that he is creating a grave risk to himself and others, corresponds to the punishment of a fifteen-year felony when that decision causes the death of another.[57] This is a just punishment. See Perkins & Boyce, Criminal Law (3d ed), pp 890-896.[58] The gravity of this crime, of course, depends on whether the guilty decision results in harm. Yet, this is the very nature of criminal negligence. The basic premise of Michigan criminal law from the common law requiring that the culpable mental state have a causal connection to the crime as stated in *Aaron* is not contradicted.

### IV. APPLICATION TO *LARDIE* AND *HUDICK*

In each of these cases, there is evidence that the driver was intoxicated while driving, his driving was impaired, and he killed another person while so driving. Lardie and Hudick do not claim that they did not voluntarily drive while intoxicated or that they did not know that they consumed alcohol before they drove. However, they may do so on remand. More-

---

[57] Moreover, a person who committed the crime of driving while intoxicated, where the previous two violations were within the previous ten years, is guilty of a felony carrying a maximum sentence of five years and a $5,000 fine even though this irresponsible conduct caused no injury. MCL 257.625(6); MSA 9.2325(6) (now [7]).

[58] " 'An intentional . . . violation of a statute or ordinance, designed for the protection of human life or limb, which proximately results in injury or death, is culpable negligence.' " *Id.* at 895, n 76, quoting *State v Cope*, 204 NC 28, 31; 167 SE 456 (1933).

.

over, each party may raise a question at trial about whether the people have met their burden of proving that the particular driver's *decision to drive while intoxicated* was a substantial cause of the deaths. The question of causation is a factual one for the jury.

Although for different reasons than the Court of Appeals offered in *Lardie*, we affirm its decision to reverse the trial court's ruling. Moreover, in *Hudick*, the Court of Appeals properly denied leave to appeal after the trial court concluded that the statute was constitutional.

CONCLUSION

The statute, MCL 257.625(4); MSA 9.2325(4), creating a fifteen-year felony for death caused by intoxicated driving, is similar to common-law involuntary manslaughter except that it eliminates the people's need to prove gross negligence. By doing so, the Legislature instead has required that the people prove that the defendant had a general intent to commit the wrongful act: to drink and then drive. Thus, the statute does not impose strict liability. Moreover, the statute requires that the culpable mental state, the mens rea, have a causal relation to the harm that the statute seeks to prevent. The statute does not violate defendants' right of due process. We affirm the Court of Appeals decisions in *Lardie* and *Hudick*.

BRICKLEY, C.J., and LEVIN, CAVANAGH, BOYLE, and MALLETT, JJ., concurred with RILEY, J.

WEAVER, J. (*concurring*). I join in the majority's holding that the OUIL causing death statute[1] is consti-

---

[1] MCL 257.625(4); MSA 9.2325(4).

tutional and in its affirmance of the decision of the Court of Appeals. I agree with the majority's finding that the statute does not codify the common law or impose strict liability. I further concur with the majority that the first two elements of the statute are: "(1) the defendant was operating his motor vehicle while he was intoxicated, (2) that he voluntarily decided to drive knowing that he had consumed alcohol and might be intoxicated . . . ."[2]

However, I write separately because I disagree with the majority's use of the term "intoxicated driving" in the third element, the causation element, to include not only the culpable condition of being intoxicated, but also the change, if any, in the particular defendant's *manner* of driving.[3] The majority's definition of "intoxicated driving" is contrary to the plain language of the statute and undermines the legislative intent. To avoid this mistake, the third element should be more precisely defined as: that the *operation* of the vehicle by the defendant, *while "under the influence,"*[4] was a cause of the victim's death.[5] Further, I

---

[2] *Ante* at 259 and ns 49-50.

[3] The majority opinion defines the third element as requiring the people to prove that "the defendant's intoxicated driving was a substantial cause of the victim's death." *Id.* at 259-260.

[4] The terms "under the influence" and "intoxicated," as used in this opinion, refer to the condition, prescribed by the statute at the time of these incidents, of being: "under the influence of intoxicating liquor or a controlled substance, or a combination of intoxicating liquor and a controlled substance, or with a blood alcohol content of 0.10% or more by weight of alcohol . . . ." MCL 257.625(4); MSA 9.2325(4).

[5] It is unnecessary to impose the common-law interpretation of the causation element in criminal negligence offenses, as further defined in *People v Kneip*, 449 Mich 83; 534 NW2d 675 (1995), because the plain language of this OUIL causing death statute clearly defines the causation element, including the "scope and necessary connection between the act and the injury . . . ." *Id.* at 95.

would not require the prosecution to "establish that the particular defendant's decision to drive while intoxicated produced a change in that driver's operation of the vehicle that caused the death of the victim." *Ante* at 258. The defendant's manner of driving, and any change in that manner attributable to the defendant's intoxicated state, is not an element of the statute. Rather, I would find that the causation element requires the people to prove that the death resulted from the defendant's commission of the culpable act prohibited by the statute, which occurs when "a person becomes intoxicated and then decides to drive," and actually does so. *Id.* at 245.

A

The relevant parts of the statute, which established the third element, provided:

> *A person,* whether licensed or not, *who operates a motor vehicle upon a highway* or other place open to the general public or generally accessible to motor vehicles . . . within this state, *under the influence* of intoxicating liquor or a controlled substance, or a combination of intoxicating liquor and a controlled substance, or with a blood alcohol content of 0.10% or more by weight of alcohol, *and by the operation of that motor vehicle causes the death of another person* is guilty of a felony, punishable by imprisonment for not more than 15 years, or a fine of not less than $2,500.00 or more than $10,000.00, or both.[6]

This statute is the fourth of nineteen subsections within the driving while intoxicated, and reckless driving provisions, set forth in MCL 257.625; MSA 9.2325. Rules of statutory construction dictate that

---

6 1991 PA 98, MCL 257.625(4); MSA 9.2325(4) (emphasis added).

this fourth subsection be construed as consistently as possible with the other subsections of MCL 257.625; MSA 9.2325.

The other relevant subsections of MCL 257.625; MSA 9.2325 included:

(1) *A person*, whether licensed or not, *shall not operate a vehicle upon a highway* or other place open to the general public or generally accessible to motor vehicles . . . within this state *if either of the following applies:*

(a) *The person is under the influence* of intoxicating liquor or a controlled substance, or a combination of intoxicating liquor and a controlled substance.

(b) *The person has a blood alcohol content of 0.10% or more* by weight of alcohol.

(2) *The owner of a vehicle or a person in charge or in control of a vehicle shall not authorize or knowingly permit the vehicle to be operated upon a highway* or other place open to the general public . . . within this state *by a person who is under the influence* of intoxicating liquor or a controlled substance, or a combination of intoxicating liquor and a controlled substance, or who has a blood alcohol content of 0.10% or more by weight of alcohol.

(3) *A person*, whether licensed or not, *shall not operate a vehicle upon a highway* or other place open to the general public . . . when, due to the consumption of an intoxicating liquor, a controlled substance, or a combination of an intoxicating liquor and a controlled substance, *the person's ability to operate the vehicle is visibly impaired.*

\*     \*     \*

(5) *A person, whether licensed or not, who operates a motor vehicle upon a highway* or other place open to the general public . . . within this state, *under the influence* of intoxicating liquor or a controlled substance, or a combination of intoxicating liquor and a controlled substance, or with a blood alcohol content of 0.10% or more by weight of alcohol, *and by the operation of that motor vehicle causes a long-term incapacitating injury to another person is*

*guilty of a felony,* punishable by imprisonment for not more than 5 years, or a fine of not less than $1,000.00 or more than $5,000.00, or both.[7]

As the emphasized portions of these subsections indicate, none consider the *manner,* or the change in the manner, in which the vehicle is being operated. Instead, these companion provisions of the OUIL causing death statute turn on the driver's *condition* or *status* while operating the vehicle.[8] While the Court of Appeals was incorrect in concluding that the statute imposes strict liability, the Court was correct in asserting:

> The crime of OUIL causing death contains the same elements as OUIL with the only additional element being the aggravated circumstances of death resulting from the prohibited conduct

where the prohibited conduct was acting upon the decision to drive while under the influence of intoxicating liquor.[9] Absent clear legislative intent to the contrary, the section of MCL 257.625;   MSA 9.2325 that includes the OUIL causing death statute should be construed in accordance with its companion provisions so that the manner of operation, i.e., how the intoxicated defendant was driving, is not an element of the offense that the people must prove.[10]

---

[7] 1991 PA 98,   MCL 257.625(1)-(3),   (5);   MSA 9.2325(1)-(3),   (5) (emphasis added).

[8] The offense of OUIL, contained in MCL 257.625(1)   and (3);   MSA 9.2325(1)   and (3)   is a "status crime" that focuses on the fact that the defendant operated a vehicle while intoxicated and does not require that the people prove the defendant was observed driving in an abnormal fashion. *People v Crawford,* 187 Mich App 344; 467 NW2d 818 (1991).

[9] *People v Lardie,* 207 Mich App 615, 618; 525 NW2d 504 (1994).

[10] Michigan courts have recognized that a

The majority's definition of causation will require the people to "establish that the particular defendant's decision to drive while intoxicated produced a change in that driver's operation of the vehicle that caused the death of the victim." *Ante* at 258. In other words, the people will have to prove that the intoxicated driver was not operating the vehicle as that person would have operated the vehicle if sober and driving under the same circumstances. Therefore, the majority's interpretation of the causation element in this statute requires the people to prove, beyond a reasonable doubt: (1) how the defendant typically drives when sober, taking into account any individual idiosyncracies or limitations, (2) how that typical, sober manner of operation would affect the defendant's driving leading up to the fatal accident, (3) how the hypothetical results of the particular defendant's typical, sober manner of operation compare to the actual, intoxicated manner of operation and that there is an identifiable difference between the two *manners* of operation, and (4) that this difference in typical, hypothetical, sober driving and actual, intoxicated driving is "a substantial" cause in fact and "a proximate cause" of the victim's death. *Id.* at 258-260. As established below, this demanding burden of proof was not intended by the Legislature and is not found in the language of the statute.

---

defendant may be convicted of OUIL even if he is observed driving in a normal fashion. *People v Walters*, 160 Mich App 396, 402-403; 407 NW2d 662 (1987). Thus, OUIL is a status crime which focuses only on the fact that the defendant operates an automobile while he is intoxicated. [*People v Crawford*, n 8 *supra* at 350.]

B

The plain language of the statute clearly indicates that the Legislature intended causation to turn on the fact that the defendant *operated* the vehicle while intoxicated, rather than the *changed manner in which, or how, the defendant operated* the vehicle while intoxicated. Therefore the defendant's culpability arises and should be evaluated in light of the defendant's culpable decision to drive while intoxicated.[11]

---

[11] The majority requires the people to prove mens rea with regard to the decision-making phase and causation when defendant is actually engaged in the intoxicated driving, a time after the culpable decision is made. The majority claims its construction of the causation element is necessary to ensure that "the statute does not impose a severe penalty when the injury was unavoidable for that particular driver . . . ." *Ante* at 258. I believe the Legislature enacted this statute with the legitimate belief that deaths from intoxicated driving are *always avoidable* because, assuming the prosecution proves the first two elements of the crime regarding mens rea, an individual can always *choose* not to make the *irrebuttable grossly negligent decision* to drive while under the influence.

Furthermore, I believe that the Legislature also drafted this provision with the reasonable belief that deaths from intoxicated driving are never so remote as to preclude criminal liability. This belief is evidenced by the irrebuttable legal presumption that the decision to drive while intoxicated is grossly negligent. *Id.* at 252-253. As recognized by the majority

> The moral culpability for the person who decides to drink and drive, where any reasonable person must recognize that he is creating a grave risk to himself and others, corresponds to the punishment of a fifteen-year felony when that decision causes the death of another. [*Id.* at 266.]

Arguments regarding the remoteness or unavoidability of causing death *after* making this culpable and inherently dangerous decision to drive while under the influence are most appropriately addressed to the court at the sentencing stage of the trial. At this stage, where justice and notions of fairness require, the court may choose to impose the minimum sentence under the OUIL causing death statute—a $2,500.00 fine. MCL 257.625(4); MSA 9.2325(4) imposes a "felony punishable by imprisonment for not more than 15 years *or* a fine of not less than $2,500.00 or more than $10,000.00, or both." (Emphasis added.)

Unlike statutes, discussed below, that prohibit similar conduct, the clear language of the OUIL causing death statute contains no reference to the *manner* in which the defendant operated the vehicle. The Legislature has enacted the following statutes that, unlike OUIL causing death, do manifest an intent, through express language, that causation be strictly tied to the specific *manner* in which the defendant operated a motor vehicle. For instance, negligent homicide requires the people to prove that the driver operated the motor vehicle "at an immoderate rate of speed or in a careless, reckless or negligent *manner* . . . ." MCL 750.324;  MSA 28.556 (emphasis added). Michigan's felonious driving statute, MCL 752.191;  MSA 28.661,  also specifically requires proof that the manner of operation caused the harm. That statute targets

> [e]very person who drives any vehicle upon a highway *carelessly and heedlessly* in wilful and wanton disregard of the rights or safety of others, or without due caution and circumspection and *at a speed or in a manner* so as to endanger or be likely to endanger any person or property and thereby injuring . . . . [Emphasis added.]

Similarly, involuntary manslaughter requires proof that the defendant operated the motor vehicle "in a grossly negligent *manner*."[12]

However, the OUIL causing death statute does not contain similar language that manifests a legislative intent to tie causation to the specific *manner* of oper-

---

[12] *Ante* at 249, n 28, citing standard jury instructions for involuntary manslaughter (emphasis added). While this crime is based in common law, the Legislature codified the penalty at MCL 750.321;  MSA 28.553 without modification to the common-law definition and elements.

ation. Instead, the language in this statute indicates
that the people need only prove that the defendant's
*operation* of the vehicle while intoxicated, not the
defendant's *uncharacteristic and intoxicated* opera-
tion,[13] was a cause of the victim's death.

C

In enacting this statute, the Legislature sought to
prohibit and punish *all* intoxicated driving that results
in a fatality, not just intoxicated driving that is per-
formed in a manner that the people can prove is dif-
ferent from that particular defendant's typical and
sober operation of a vehicle in the same situation.
The statute is aimed at prevention and deterrence.[14]
As the legislative analysis reveals, this statute was
enacted because

---

[13] The majority acknowledges that "the people need not prove the fur-
ther point that the defendant's driving was grossly negligent." *Ante* at 251.
However, the majority does impose an equally, if not more, onerous bur-
den on the people by requiring them to prove a hypothetical situation, the
particular defendant's projected sober manner of operating the vehicle,
and also a negative fact, that the death would not have occurred in the
hypothetical situation.

Furthermore, the majority's causation element rewards the individuals
who typically drive in a careless or unsafe fashion when sober. As long as
the typically careless, inattentive sober driver operates the vehicle in a
characteristically poor or unsafe manner while intoxicated, the people
will not be able to prove that intoxication caused the change in the man-
ner of operation that, in turn, was a substantial cause of the victim's
death. However, those individuals, who typically drive in a careful and
alert manner, as evidenced by a good driving record and history, are more
likely to be convicted under the statute for any intoxicated driving that
varies from their sober, careful driving where this variation is a substan-
tial cause of the victim's death.

[14] The legislative analysis indicates that the Legislature was frustrated
by the difficulty of enforcing the OUIL laws, citing a National Highway
Traffic Safety Administration estimation that "on the average a drinking
driver can drive drunk about 5,000 miles before being arrested; only one
in a thousand drunk drivers get arrested." House Legislative Analysis, HB
4827, June 4, 1991.

"too many drinkers are irresponsible drivers who are *willing* to risk current penalties to get behind the wheel. The *proposed legislation will deter those drivers* by closing technical loopholes in the law, promising swift and sure punishment for drinking drivers . . . ."[15]

The majority's definition of causation creates an unintended loophole and diminishes the chances of swift and sure punishment by requiring the people to prove that, in a similar situation, that particular defendant, if sober, would not have caused the death. I disagree with the majority's assertion that

there is no reason to penalize an intoxicated driver with a fifteen-year felony when there is an accident resulting in a fatality if that driver, even if not intoxicated, would still have been the cause in fact of the victim's death. There would be no reason because it would not prevent that fatality from occurring again.[16]

The Legislature enacted the statute so that the burden of prevention rests clearly and heavily with the party most capable of avoiding fatalities, the intoxicated person who decides whether or not to drive. The Legislature drafted the statute so that the intoxicated driver would be responsible for *all* consequences that flow from his decision to drive while intoxicated.[17]

---

[15] *Ante* at 253, n 33. The legislative analysis reveals that the Legislature enacted this statute to specifically combat societal acceptance of drinking and driving, and the belief that the drinking driver will not be caught and punished. House Legislative Analysis, HB 4827, May 23, 1991.

[16] *Id.* at 258.

[17] The majority recognizes the statutory design to "deter motorists from deciding to drive after they have become intoxicated." *Id.* at 245. However, the majority's insistence that the manner of driving is an element of the statute only proliferates the misconception that driving while under

The majority's determination that the defendant's *"drunken* driving" must be a substantial cause of the victim's death significantly frustrates the Legislature's intent to prevent intoxicated driving, which always has the potential to result in death.

In essence, Michigan law imposes two distinct duties on drivers—to drive reasonably[18] and not to drive while intoxicated.[19] If, as the majority acknowledges, there is an "irrebuttable presumption of gross negligence"[20] in driving while intoxicated, then intoxicated driving is *never* safe or reasonable conduct. Therefore, there is no such thing as safe or nonculpable driving while intoxicated. *Any* intoxicated driving is a violation of the duty all motorists owe to those with whom they share the road—to drive only when not intoxicated, or to suffer the consequences.[21]

---

the influence of intoxicating liquor is permissible as long as the driver can drive as if sober.

[18] This Court has recognized that " 'Every person driving upon the public highway, or in other places frequented by others, is bound to exercise reasonable care and caution to prevent injury to others.' " *People v Traughber*, 432 Mich 208, 217; 439 NW2d 231 (1989), quoting *People v McMurchy*, 249 Mich 147, 167; 228 NW 723 (1930).

[19] MCL 257.625(4);  MSA 9.2325(4).

[20] *Ante* at 252.

[21] Indeed the majority seems to acknowledge this point when it proclaims, "the legislation in the present case seeks not to regulate the conduct of a *person who is otherwise innocent,* but punishes a person's gravely irresponsible act of operating a vehicle while intoxicated when that act causes another person's death." *Id.* at 255.