PEOPLE *v.* HATINGER.

1. CRIMINAL LAW—INTENT—CONSTITUTIONAL LAW.

It is within the authority of the legislature to forbid the doing of an act, and to declare it criminal without regard to the intent of the doer.

2. INTOXICATING LIQUORS—LOCAL OPTION—INTENT—GOOD FAITH.

Guilty knowledge that a beverage sold as a soft drink contained 5.6 per cent. alcohol is not a necessary ingredient of a violation of the local-option law. Act No. 183, Pub. Acts 1899 (2 How Stat. [2d Ed.] § 5017 *et seq.*).

3. CONSTITUTIONAL LAW—TRIAL BY JURY—DIRECTING VERDICT IN
    CRIMINAL CASE.
    Where none of the facts were in dispute, and under an agreed
    statement of the facts which showed that the accused sold a
    beverage containing 5.6 per cent. alcohol in violation of the
    local-option law, the trial court committed no error in advis-
    ing the jury that [they should retire and find a verdict of
    guilty, and that it was their duty so to do, at the same time
    permitting them to retire and deliberate on their verdict: re-
    spondent's right to a trial by jury was not invaded.

Exceptions before sentence from Montcalm; Davis, J.
Submitted January 28, 1913. (Docket No. 147.) De-
cided March 20, 1913.

Ernest Hatinger was convicted of violating the local-
option law. Affirmed.

*Charles B. Rarden*, Prosecuting Attorney, for the peo-
ple.

*L. C. Palmer*, for respondent.

BIRD, J. Under an agreed statement of facts in the
trial court, the respondent was convicted by a jury of a
violation of the local-option law. He now seeks to have
the conviction set aside by this court, on the ground that
it is at variance with the law.

It appears from the stipulation of facts that respondent,
in the months of August and September, 1912, was oper-
ating a lunch and soft drink counter in the village of Ed-
more; that he had on sale what was known as "Old Fort
Cider," which he purchased under a positive guaranty
that it contained no alcohol; that the same was analyzed
and found to contain 5.6 per cent. alcohol; that as soon as
respondent learned that it contained alcohol he discon-
tinued the sale. It is conceded by the people that respond-
ent bought and sold the cider in good faith and with no
intent to violate the law.

It was the claim of respondent that under the case made
by the stipulation he was entitled to a directed verdict of

not guilty. This claim is based upon the concession of the people that respondent had no intent to violate the law. The contention of the prosecuting attorney was that the question of intent was immaterial, and was not a prerequisite to a conviction. The trial court agreed with the contention of the prosecuting attorney, and instructed the jury that it was their duty to return a verdict of guilty.

The question raised is one of construction of the statute which is charged to have been violated. While most of the offenses defined by the criminal laws involve guilty knowledge or intent, it is admittedly competent for the legislature to forbid the doing of an act and make its commission criminal without regard to the intent of the doer. *People* v. *Waldvogel*, 49 Mich. 337 (13 N. W. 620); *People* v. *Roby*, 52 Mich. 577 (18 N. W. 365, 50 Am. Rep. 270). If the legislature may create offenses with or without the element of intent, it becomes important to inquire what its intention was with respect to the passage of Act No. 183 of the Public Acts of 1899.

Section 1 of the act prohibits in positive terms the sale of intoxicating liquors, and no language is used which indicates that the element of intent is to be read into it. Had the legislature intended to make the intent to violate the law an essential element, it would have doubtless used some appropriate language indicating its purpose. If it were necessary to prove intent to violate the law before a conviction could be had, the act would fall far short of doing what the legislature obviously intended it should do; and presumably in this can be found the chief reason why it did not incorporate into the act the element of intent. Laws forbidding the sale of intoxicating liquor and impure foods would be of little use, if convictions for their violations were to depend on showing guilty knowledge. The fact, then, that respondent had no knowledge that the cider contained alcohol and that he purchased it and sold it in good faith, with no intent to violate the law, will not avail him in the face of his admission that he sold it and that it contained alcohol. *State* v. *Tomasi*, 67 Vt.

312 (31 Atl. 780); *People* v. *Ingraham*, 100 Mich. 530 (59 N. W. 234); *People* v. *Roby*, 52 Mich. 577 (18 N. W. 365, 50 Am. Rep. 270); *People* v. *Waldvogel*, 49 Mich. 337 (13 N. W. 620); 23 Cyc. p. 184.

The trial court, in charging the jury, said to them, in part:

"Under the admitted state of facts in this case, I deem it my duty to say to you that you should retire and find a verdict of guilty against the respondent in this case. Under the facts I can see no other way out of it. It may seem like a hardship, but I think it is my duty to say this to you; and I think it is your duty to find him guilty under the charge of the court."

This is said to have been error on the part of the court, in that it invaded the constitutional right of the respondent to have his guilt passed upon by a jury. No impropriety is apparent in this instruction. None of the facts were in dispute; they were all admitted. Under these circumstances it was proper for the trial court to advise the jury as to the law applicable to the admitted facts, and also to advise them what their duty was in the premises. After so advising them, they were permitted to retire to deliberate on their verdict. The instruction given went no further than this, and was clearly within the holding in *People* v. *Neumann*, 85 Mich. 98 (48 N. W. 290).

The conviction is affirmed.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, STONE, and OSTRANDER, JJ., concurred.