PEOPLE v JENSEN (ON REMAND)

Docket No. 210655. Submitted April 3, 1998, at Lansing. Decided August 28, 1998, at 9:15 A.M. Leave to appeal sought.

Brenda L. Jensen was convicted by a jury in the Muskegon Circuit Court, Michael E. Kobza, J., of three counts of knowing that she was HIV infected and engaging in sexual penetration without informing her partner that she was HIV infected. The defendant appealed, raising a number of issues, including claims that the statute under which she was convicted, § 5210 of the Public Health Code, MCL 333.5210; MSA 14.15(5210), was unconstitutionally overbroad and infringed her constitutional rights of privacy and against compelled speech. The Court of Appeals, MARKEY, P.J., and MICHAEL J. KELLY and M. J. TALBOT, JJ., affirmed, holding that the constitutional challenges had not been preserved for appellate review and declining to consider those claims because consideration of those issues would not be decisive to the case. 222 Mich App 575 (1997). The Supreme Court, in lieu of granting leave to appeal, vacated in part the judgment of the Court of Appeals, remanded the case to the Court of Appeals for consideration of the question of the constitutionality of MCL 333.5210; MSA 14.15(5210), and denied leave to appeal in all other aspects. 456 Mich 931 (1998).

The Court of Appeals held:

1. The defendant argues that § 5210 is overbroad because it fails to limit the offense to consensual sexual acts and would seemingly result in criminal liability for victims of nonconsensual sex who do not inform their attackers of the fact that they have AIDS or are HIV infected. Because the evidence at trial clearly established that the defendant engaged in consensual acts of sexual penetration without informing her sexual partner of the fact that she was HIV infected, she may not challenge § 5210 on the ground of constitutional overbreadth because it might conceivably be applied unconstitutionally to others in other situations.

2. The defendant argues that § 5210 is unconstitutional because it does not require the showing that a defendant had a specific intent to harm the victim and thus lacks a mens rea requirement. Although § 5210 contains no express mens rea requirement, it would appear that the Legislature intended that an intent to harm

be shown but that the failure of a defendant to warn a sexual partner of the risk involved was so grossly negligent as to establish presumptively that the defendant had a culpable mental state and that there existed a causal relationship between the defendant's culpable state of mind and the possible harm to the sexual partner. Accordingly, the Legislature intended to require that the prosecution prove that a defendant had a general intent to commit the wrongful act, i.e., to engage in sexual penetration with another person while withholding from that other person knowledge that the defendant had AIDS or was HIV infected, and thus, § 5210 is not constitutionally infirm on the ground that the showing of a mens rea is not required.

3. The defendant argues that § 5210 is unconstitutional because it infringes her right of privacy and her right to be free from compelled speech. The constitutional right of privacy with respect to private sexual acts is not absolute but, rather, must yield to narrowly tailored state regulation where there is a compelling state interest. Michigan has an undeniable compelling interest in discouraging the spread of HIV. In light of the compelling state interest in protecting the population from an incurable sexually transmitted disease, the requirement that a person infected with HIV inform a sexual partner of that condition is sufficiently narrowly tailored to promote that state interest to warrant the limited restraint on a defendant's constitutional right of privacy. Accordingly, § 5210 does not deprive the defendant of her constitutional right of privacy.

4. A constitutional right to be free from compelled expression exists under certain circumstances; however, the strict scrutiny applied to other First Amendment cases is not appropriate to compelled-expression cases. Because § 5210 clearly compels an HIV-infected person to expressly inform a sexual partner of the infection, it infringes the infected person's right to be free from compelled speech. As with the right of privacy, the right to be free from compelled speech is not absolute and must be balanced against the state's interest in compelling the speech. Because the state's interest in ensuring against the unknowing exposure to and spread of an incurable disease is compelling and the compelled expression involves a private rather than a public disclosure, the state's interests in requiring the disclosure outweigh the defendant's right to be free from compelled speech. Accordingly, § 5210 does not unconstitutionally infringe on the right to be free from compelled speech.

Affirmed.

1. CRIMINAL LAW — FAILURE TO INFORM SEXUAL PARTNER OF AIDS or HIV INFECTION — CONSTITUTIONAL LAW — MENS REA.

The provision of the Public Health Code making it a felony to engage in sexual penetration without first informing a sexual partner of having AIDS or being HIV infected is not unconstitutional on the basis that it has no mens rea requirement; although that provision contains no express mens rea requirement, the Legislature intended that an intent to harm be shown, but presumed that the failure of a defendant to warn a sexual partner of the risk involved was so grossly negligent as to establish that the defendant had a culpable mental state and that a causal relationship between the defendant's culpable state of mind and the possible harm to the sexual partner existed; accordingly, the prosecution must prove that a defendant had a general intent to commit the wrongful act, i.e., to engage in sexual penetration with another person while withholding from that person knowledge that the defendant had AIDS or was HIV infected (MCL 333.5210; MSA 14.15[5210]).

2. CRIMINAL LAW — FAILURE TO INFORM SEXUAL PARTNER OF AIDS or HIV INFECTION — CONSTITUTIONAL LAW — RIGHT OF PRIVACY.

The provision of the Public Health Code making it a felony to engage in sexual penetration without first informing a sexual partner of having AIDS or being HIV infected is not unconstitutional on the basis that it improperly infringes the right of privacy; the constitutional right of privacy with respect to private sexual acts is not absolute but, rather, must yield to narrowly tailored state regulation where there is a compelling state interest; requiring a person infected with HIV to inform a sexual partner of that condition furthers the state's compelling interest in protecting the population from an incurable sexually transmitted disease and is sufficiently narrowly tailored to warrant the limited restraint on a defendant's constitutional right of privacy (MCL 333.5210; MSA 14.15[5210]).

3. CRIMINAL LAW — FAILURE TO INFORM SEXUAL PARTNER OF AIDS or HIV INFECTION — CONSTITUTIONAL LAW — COMPELLED SPEECH.

The provision of the Public Health Code making it a felony to engage in sexual penetration without first informing a sexual partner of having AIDS or being HIV infected is not unconstitutional on the basis that it compels speech in violation of the First Amendment right of free speech; a constitutional right to be free from compelled expression exists under certain circumstances, but the strict scrutiny applied to other First Amendment cases is not appropriate to compelled expression cases; the right to be free from compelled speech is not absolute and must be balanced against the state interest in compelling the speech; because the state's interest in ensuring against the unknowing exposure to and spread of an incurable disease is compelling and the compelled expression involves a pri-

vate rather than a public disclosure, the state's interests in requiring the disclosure outweigh the defendant's right to be free from compelled speech (MCL 333.5210; MSA 14.15[5210]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Tony Tague*, Prosecuting Attorney, and *Kevin A. Lynch*, Senior Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Gail Rodwan*), for the defendant on appeal.

Amicus Curiae:

*Jerrold Schrotenboer*, for the Prosecuting Attorneys Association of Michigan.

ON REMAND

Before: MARKEY, P.J., and KELLY and TALBOT, JJ.

MARKEY, P.J. Following a jury trial, defendant was convicted of three counts of knowing that she tested seropositive for HIV and engaging in sexual penetration without informing her partner that she was HIV infected, MCL 333.5210; MSA 14.15(5210). Thereafter, the trial court sentenced defendant to concurrent terms of two years and eight months to four years' imprisonment for each of the three counts. On appeal, this Court affirmed her convictions. *People v Jensen*, 222 Mich App 575; 564 NW2d 192 (1997). Defendant filed her application for leave to appeal with the Supreme Court. Pursuant to MCR 7.302(F)(1) and in lieu of granting leave, the Supreme Court ordered:

[T]he judgment of the Court of Appeals is vacated in part and the case is remanded to the Court of Appeals for further consideration and decision on the merits of the ques-

tion whether MCL 333.5210; MSA 14.15(5210) is constitutional. MCR 7.302(F)(1). In all other respects, leave to appeal is denied because the Supreme Court is not persuaded that the questions presented should be reviewed. [456 Mich 931 (1998).]

On remand, we find that the HIV notice statute is neither constitutionally overbroad nor violative of defendant's rights to privacy or against compelled speech.

I

Initially, we incorporate by reference the extended recitation of facts set forth in the original *Jensen, supra* at 577-579.

First, defendant asserts that MCL 333.5210; MSA 14.15(5210), which makes it a crime to fail to inform a sexual partner that one has AIDS[1] or is HIV infected is unconstitutionally overbroad because it (1) includes both consensual and nonconsensual sexual acts and (2) fails to require an intent to cause harm. We believe that defendant's constitutional challenges on these grounds fail.

A

MCL 333.5210; MSA 14.15(5210) states as follows:

(1) A person who knows that he or she has or has been diagnosed as having acquired immunodeficiency syndrome or acquired immunodeficiency syndrome related complex,

---

[1] AIDS is defined as "a syndrome that involves a compromised immune system that renders the [person] highly susceptible to" communicable diseases. *Sanchez v Lagoudakis (After Remand),* 458 Mich 704, 709; 581 NW2d 257 (1998). Also, AIDS occurs "when an individual is seropositive for HIV *and* has one of certain associated illnesses, and . . . when an individual with HIV contracts any one of a multitude of possible opportunistic infections. *Id.* at n 4."

or who knows that he or she is HIV infected, and who engages in sexual penetration with another person without having first informed the other person that he or she has acquired immunodeficiency syndrome or acquired immunodeficiency syndrome related complex or is HIV infected, is guilty of a felony.

(2) As used in this section, "sexual penetration" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required.

As we begin our overbreadth analysis, we are mindful that a statute is accorded a strong presumption of validity and that we have a duty to construe it as valid absent a clear showing of unconstitutionality. *People v White*, 212 Mich App 298, 309; 536 NW2d 876 (1995). Moreover, the constitutionality of a statute is a question of law that we review de novo. *Mahaffey v Attorney General*, 222 Mich App 325, 334-335; 564 NW2d 104 (1997).

The overbreadth doctrine is primarily applied to First Amendment cases where an overbroad statute prohibits constitutionally protected conduct. *People v Cavaiani*, 172 Mich App 706, 711; 432 NW2d 409 (1988). The overbreadth of a statute must be real and substantial; it must be judged in relation to the legitimate sweep of the statute where conduct and not merely speech is involved. *Broadrick v Oklahoma*, 413 US 601, 614-615; 93 S Ct 2908; 37 L Ed 2d 830 (1973). In *Broadrick, supra* at 610, the United States Supreme Court recognized that a person to whom a statute may be constitutionally applied may not challenge that statute as overbroad on the grounds that it

*conceivably* may be unconstitutional when applied to others in situations not before the court.

In *People v Russell*, 158 Ill 2d 23; 196 Ill Dec 629; 630 NE2d 794 (1994), the Illinois Supreme Court was faced with a similar overbreadth argument when the defendant challenged Illinois' criminal statute prohibiting the knowing transmission of HIV to another through intimate contact.[2] Upholding the statute

---

[2] Illinois' criminal statute, Ill Comp Stat, Ann ch 720, 5/12-16.2, reads as follows:

Criminal Transmission of HIV.

(a) A person commits criminal transmission of HIV when he or she, knowing that he or she is infected with HIV:

(1) engages in intimate contact with another;

(2) transfers, donates, or provides his or her blood, tissue, semen, organs, or other potentially infectious body fluids for transfusion, transplantation, insemination, or other administration to another; or

(3) dispenses, delivers, exchanges, sells, or in any other way transfers to another any nonsterile intravenous or intramuscular drug paraphernalia.

(b) For purposes of this Section:

"HIV" means the human immunodeficiency virus or any other identified causative agent of acquired immunodeficiency syndrome.

"Intimate contact with another" means the exposure of the body of one person to a bodily fluid of another person in a manner that could result in the transmission of HIV.

"Intravenous or intramuscular drug paraphernalia" means any equipment, product, or material of any kind which is peculiar to and marketed for use in injecting a substance into the human body.

(c) Nothing in this Section shall be construed to require that an infection with HIV has occurred in order for a person to have committed criminal transmission of HIV.

(d) It shall be an affirmative defense that the person exposed knew that the infected person was infected with HIV, knew that the action could result in infection with HIV, and consented to the action with that knowledge.

(e) A person who commits criminal transmission of HIV commits a Class 2 felony.

against the defendant's constitutional challenge, the Illinois Supreme Court observed:

> In one of the cases before us, the criminal complaint charges that the defendant Caretha Russell knew that she was infected with the HIV virus when she engaged in consensual sexual intercourse with Daren Smith without telling Smith of her infection. In the other case, defendant Timothy Lunsford is charged with raping a woman at a time when he knew he was infected with the HIV virus.
>
> Neither the statute nor the cases before us have even the slightest connection with free speech. *Consequently, pursuant to constitutional interpretations of the United States Supreme Court, defendants' overbreadth argument and their argument of facial vagueness are inapplicable. Bates v State Bar*, 433 US 350, 380; 97 S Ct 2691, 2707; 53 L Ed 2d 810, 833 (1977); *Smith v Goguen*, 415 US 566; 94 S Ct 1242; 37 L Ed 2d 605 (1974); *Broadrick*, [*supra* at 611-617]; *Grayned v City of Rockford*, 408 US 104; 92 S Ct 2294; 33 L Ed 2d 222 (1972). [*Russell, supra* at 25-26 (emphasis added).]

In the case at bar, defendant specifically argues that the statute is overbroad because it fails to limit the offense to consensual sexual acts but instead seemingly also compels victims of nonconsensual sex who happen to be HIV or AIDS carriers to inform their attackers of that status. In formulating her argument, however, defendant fails to differentiate between the speech of a consensual partner versus a nonconsensual partner, other than by suggesting that to compel speech from the latter is unfair. Because defendant does not establish how the statute in question improperly sweeps within its inclusion both protected and unprotected conduct, this facet of the defendant's overbreadth analysis is inappropriate.

More importantly, however, defendant's conduct, i.e., engaging in sexual intercourse with the victim without previously telling him that she was HIV positive, is clearly encompassed by the language of the statute. Accord *State v Gamberella*, 633 So 2d 595, 603 (La App, 1993) (upholding the constitutionality of Louisiana's statute criminalizing the intentional exposure of individuals to AIDS or HIV without their informed consent).[3] Because a person to whom a statute may constitutionally be applied will not be allowed to challenge that statute on the ground that it conceivably may be applied unconstitutionally to others in situations not before the court, *Broadrick, supra; Gamberella, supra*, we find no merit in defendant's overbreadth claim.

Moreover, because the present case does not involve a victim of nonconsensual sexual acts, this Court's exploration of any policy arguments regarding

---

[3] Louisiana's statute criminalizing the intentional exposure of others to the AIDS virus, La Rev Stat 14:43.5, states as follows in pertinent part:

A. No person shall intentionally expose another to any acquired immunodeficiency syndrome (AIDS) virus through sexual contact without the knowing and lawful consent of the victim.

B. No person shall intentionally expose another to any acquired immunodeficiency syndrome (AIDS) virus through any means or contact without the knowing and lawful consent of the victim.

\*        \*        \*

D. For purposes of this Section, the following words have the following meanings:

(1) "Means or contact" is defined as spitting, biting, stabbing with an AIDS contaminated object, or throwing of blood or other bodily substances. . . .

E. (1) Whoever commits the crime of intentional exposure to AIDS virus shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both. . . .

whether a sexual assault victim should be held criminally responsible for not informing the attacker is also inappropriate. Although defendant does not question whether the Legislature truly intended to implicate both consensual and nonconsensual sexual partners within the ambit of the statute, defendant's behavior in this case fell squarely within the contemplation of the statute. Moreover, defendant was found competent to stand trial and criminally responsible for her behavior. The evidence established that she understood the dangers of having unprotected sexual relations with another person and that she had a duty to warn them, but she disregarded both. The evidence also established that defendant consensually engaged in sexual relations with the victim and purposefully withheld the fact she was HIV infected because she did not want to "kill the relationship," and wanted people to like her. We therefore believe that because the statute squarely applies to defendant, she is also precluded from engaging in this overbreadth analysis. *Broadrick, supra.*

B

Defendant further argues that the statute is unconstitutional because it does not contain an intent, or mens rea, requirement. More specifically, defendant asserts that because the statute does not require a specific intent to harm, persons who do not understand or appreciate the consequences of their acts can be found criminally responsible. We disagree.

In light of defendant's repeated argument that mentally deficient individuals will be prosecuted under this statute, we reiterate and remind defendant that, even though the evidence in the instant case does not

support such a factual situation, if a "person lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law," a finding of criminal responsibility will be precluded under the legal insanity defense statute, MCL 768.21a(1); MSA 28.1044(1)(1).

With respect to defendant's mens rea argument, we note that fewer than half the states have criminal statutes penalizing the exposure of others to HIV, and only a few of those contain an explicit mens rea requirement. See Idaho Code 39-608   ("Any person who exposes another in any manner with the *intent to infect* or, knowing that he or she is or has been afflicted with [AIDS, ARC, or HIV], transfers or attempts to transfer any of his or her body fluid, body tissue or organs to another person is guilty of a felony"); Okla Stat tit 21, 1192.1   (it is unlawful for a person who knows he or she has AIDS or HIV "and with *intent to infect* another" to engage in sexual penetration with another where the other person did not consent to the penetration or had not been informed of the AIDS or HIV); ND Cent Code 12.1-20-17   (a person with HIV or AIDS who "willfully transfers" any of that person's body fluid to another person is guilty of a felony unless the risk was fully disclosed and an "appropriate prophylactic device" was used). The others, including Michigan's statute, are silent on this topic except to make it a crime for a person with a known HIV or AIDS infection to fail to reveal that condition before donating blood, engaging in sexual penetration, or engaging a prostitute.[4] Unfortunately, neither

---

[4] See Md Health Gen Code Ann 18-601.1;   Tenn Code Ann 39-13-109;   Ark Code Ann 5-14-123;   SC Code 44-29-145;   Ill Comp Stat Ann, ch 720,

the court in *Russell, supra,* nor the courts in any of the other states with similar statutes have resolved this mens rea dispute.

Notably, however, in *People v Lardie,* 452 Mich 231, 256; 551 NW2d 656 (1996), our Supreme Court recently upheld the constitutionality of the statute that criminalizes causing death by operating a vehicle while intoxicated. The statute was challenged after the trial court held that it unconstitutionally precluded the jury from determining the defendant's mental state or intent, but this Court upheld the statute as creating a "strict liability, public welfare offense" without requiring the prosecutor to prove mens rea. *Lardie, supra* at 235-236.

In upholding the constitutionality of that statute, our Supreme Court, *id.* at 239-241, 246, made the following observations:

> In order to determine whether a statute imposes strict liability or requires proof of a mens rea, that is, a guilty mind, this Court first examines the statute itself and seeks to determine the Legislature's intent. *People v Quinn,* 440 Mich 178, 185; 487 NW2d 194 (1992). In interpreting a statute in which the Legislature has not expressly included language indicating that fault is a necessary element of a crime, this Court must focus on whether the Legislature nevertheless intended to require some fault as a predicate to finding guilt. *Id.* In this statute, the Legislature did not expressly state that a defendant must have a criminal intent to commit this crime.
>
> Criminal intent is ordinarily an element of a crime even where the crime is created by statute. *People v Rice,* 161 Mich 657, 664; 126 NW 981 (1910). Statutes that create strict liability for all of their elements are not favored.

5/12-16.2; Ga Code Ann 16-5-60; Mo Rev Stat 191.677; Mont Code Ann 50-18-112.

*Quinn, supra* at 187. Nevertheless, a state may decide under its police power that certain acts or omissions are to be punished irrespective of the actor's intent. *Id.* at 186-187; *People v Hatinger,* 174 Mich 333, 335; 140 NW 648 (1913). Many of the crimes that impose strict liability have been termed "public welfare regulation." *Quinn, supra* at 187; see also *Morissette v United States,* 342 US 246, 255; 72 S Ct 240; 96 L Ed 288 (1952) (public-welfare offenses). . . .

Specific intent is defined as a particular criminal intent beyond the act done, whereas general intent is merely the intent to perform the physical act itself. *People v Beaudin,* 417 Mich 570, 573-574; 339 NW2d 461 (1983); *People v Langworthy,* 416 Mich 630, 639, 644; 331 NW2d 171 (1982). For a strict liability crime, the people need only prove that the act was performed regardless of what the actor knew or did not know. *Quinn, supra* at 188. On this basis, the distinction between a strict-liability crime and a general-intent crime is that, for a general-intent crime, the people must prove that the defendant purposefully or voluntarily performed the wrongful act, whereas, for a strict-liability crime, the people merely need to prove that the defendant performed the wrongful act, irrespective of whether he intended to perform it. Under MCL 257.625(4); MSA 9.2325(4), the distinction is important only in the rare circumstances where a defendant was driving when he honestly did not know he had consumed alcohol, which subsequently caused him to be intoxicated, or where he was forced to drive for some reason despite his intoxication.

. . . Where a statute is a codification of the common law and that common-law crime includes a mens rea as an element, this Court will interpret that statute to require a mens rea even if the statute is silent regarding knowledge as a necessary element. See *Quinn, supra* at 185-186.

\*    \*    \*

Where the offense in question does not codify the common law and omits reference to the element of intent, this Court will examine the Legislature's intent in enacting the legislation to determine whether there is a mens rea requirement. *Quinn, supra* at 196.

Our Supreme Court in *Lardie* concluded that the Legislature intended to eliminate the gross negligence requirement that attended common-law involuntary manslaughter, the crime with which intoxicated drivers who killed were charged before the statute was enacted. *Id.* at 250-251. Rather, the Legislature essentially presumed gross negligence as a matter of law from a person's voluntarily driving while knowing of the possibility of being intoxicated. *Id.* Nevertheless, the Court believed that the Legislature presumably intended to require proof of a criminal intent for the criminal act of intoxicated driving.[5] *Id.* "[W]e conclude that the statute requires the people to prove that a defendant, who kills someone by driving while intoxicated, acted knowingly in consuming an intoxicating liquor or a controlled substance, and acted voluntarily in deciding to drive after such consumption." *Id.* at 256.

---

[5] In *Lardie, supra,* our Supreme Court specifically concluded, therefore, that (1) the Legislature reasonably may have decided that voluntarily driving while intoxicated was grossly negligent because it "shows a culpable indifference to the safety of others," *id.* at 252, (2) the presumption of gross negligence is only reasonable if the defendant voluntarily decided to drive and drove knowing he consumed intoxicating liquor or a controlled substance, thereby knowing he could be intoxicated, *id.* at 251, (3) the Legislature intended to deter drunk driving and intended that the prosecution prove that the driver voluntarily or willingly decided to commit *this* culpable act, *id.* at 252-253, (4) the crime did not fit the definition of a public-welfare strict-liability offense, which places the burden of protecting society on a person " 'otherwise innocent but standing in responsible relation to public danger,' " because (a) the driver was not otherwise innocent and (b) public welfare crimes generally have "relatively small" penalties and do not do "grave damage to an offender's reputation," *id.* at 254-255, and (5) the statute punishes a person's gravely irresponsible act of operating a vehicle while intoxicated and causes another's death, which conduct is malum in se, *id.* at 255. Accordingly, the Court found that where the prosecutor must prove a mens rea by showing that the defendant purposefully drove while intoxicated (i.e., he had the general intent to perform the wrongful act), the statute did not impose strict liability. *Id.* at 256.

Applying the rationale of *Lardie* to the case at bar, we believe it likely that the Legislature intended to require some type of intent as a predicate to finding guilt under MCL 333.5210; MSA 14.15(5210), but that here the requisite intent is inherent in the HIV-infected person's socially and morally irresponsible actions. *Lardie, supra.* Moreover, the Legislature could reasonably have presumed that it is grossly negligent for an HIV-infected person to engage in *any* sexual penetration with another person without full disclosure of the existence of the HIV infection. What does nondisclosure achieve? Only further dissemination of a lethal, incurable disease in order to gratify the sexual or other physical pleasures of the already infected individual.[6] Disclosure would permit the other person to either refuse sexual contact or consent with knowledge of the risks that are being taken. We also believe that the Legislature's primary concern is stemming the spread of HIV and AIDS throughout the population (similar to curtailing people from voluntarily driving while under the influence, as in *Lardie, supra*).[7] Failure to disclose not only places the unwit-

---

[6] Although opponents argue that these criminal statutes will dissuade individuals from being tested for AIDS and that they will increase the amount of discrimination that HIV-infected individuals already face, we are unpersuaded that these arguments favor nondisclosure. The statute does not prohibit individuals diagnosed with AIDS or infected with HIV from having private physical relations within a marriage or relationship as long as both parties understand and accept the risks. There is no discrimination or criminalization in that context. Where, however, persons with AIDS and HIV become the agents of their own incurable epidemics, we believe that the Legislature has the ability to protect the public health, welfare, and safety through legislation such as MCL 333.5210; MSA 14.15(5210). Thus, we reject defendant's attempts to broaden the scope of this case beyond one woman's desire to have unprotected sex with unwitting participants and, in the process, likely infecting them with HIV.

[7] According to the House Legislative Analysis, HB 5026, January 25, 1989, p 4, which eventually became MCL 333.5210; MSA 14.15(5210),

ting participant but also that participant's other sexual partners at serious risk of premature death. Indeed, the probable results accompanying nondisclosure are fairly predictable: death to innocent third parties.

Moreover, in *Lardie, supra* at 264, 267, our Supreme Court also found that the death caused by intoxicated driving statute required a "causal relationship" between the defendant's culpable state of mind, i.e., intentionally driving while intoxicated, and the other person's resulting death. Here, the same causal connection exists despite the variety of methods by which one may contract AIDS or HIV or a myriad of other diseases that could end one's life. Knowingly engaging in sexual conduct capable of transmitting HIV without informing a partner of being HIV infected is the culpable state of mind that can cause the partner's resulting infection and eventual death.

Accordingly, although MCL 333.5210; MSA 14.15(5210) contains no express mens rea requirement, we presume that the Legislature intended to require that the prosecution prove that the defendant had a general intent to commit the wrongful act, i.e., to engage in sexual penetration with another person while failing to disclose that the defendant has AIDS or

proponents noted that unlike other hazardous communicable diseases where infected people can be quarantined for short periods while they are cured, this is not true with the HIV infection, i.e., once infected, one is infected, and presumably infected for life. There is no vaccine, treatment, or cure. Moreover, even a "few recalcitrant HIV carriers" "can wreak enormous havoc upon society both financially and in terms of sheer physical and emotional suffering on the part of their victims." Further, the bill fairly balanced the legitimate needs of certain people to know the identities of HIV-infected people against those people's rights to privacy and provided penalties for unlawful disclosure of confidential AIDS-related information.

is HIV infected. See *Lardie, supra* at 267. Thus, the statute does not require strict liability because if a defendant admits being HIV infected and the other person consents to the physical contact despite the risks associated with such contact, there is no criminal liability. Finally, the statute requires that the culpable mental state have a causal relationship to the harm that the statute seeks to prevent, *id.*, i.e., requiring disclosure of being HIV infected will reduce the unwitting spread of AIDS and HIV-related diseases. We therefore find that MCL 333.5210; MSA 14.15(5210) is not constitutionally infirm on the basis that it lacks an explicit mens rea requirement.

II

Finally, defendant asserts that MCL 333.5210; MSA 14.15(5210) violates her constitutional right of privacy and her right to be free from compelled speech by making it a crime to fail to inform a sexual partner of having AIDS or being HIV infected. On review de novo, we disagree. See *Mahaffey, supra* at 334-335.

A

In *Hobbins v Attorney General*, 205 Mich App 194, 205-206; 518 NW2d 487 (1994), this Court discussed the "right of privacy" founded in the Fourteenth Amendment's concept of personal liberty and restrictions on state action:

> The Court [in *Roe v Wade*, 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973)], however, expressly stated that this "privacy right . . . cannot be said to be absolute," and noted that it has consistently "refused to recognize an unlimited right of this kind in the past." *Id.* at 154. *Essential to the analysis in the case at bar is the Supreme Court's recognition and affirmation of the state's compelling interest in*

*protecting life . . . . Furthermore, "a State [has] an unqualified interest in the preservation of human life." Cruzan v Director, Dep't of Health,* 497 US 261, 282; 110 S Ct 2841; 111 L Ed 2d 224 (1990). *The constitutionality of legislative enactments to protect life is clearly established in our law.*

When individuals assert constitutional rights against state regulation, whether encompassed by the "zones of privacy" recognized in *Roe* or acknowledged as a liberty interest protected by the Due Process Clause of the Fourteenth Amendment, a court must balance the individual interest against the state's interest. It is, of course, necessary that the asserted right be one that is accorded constitutional protection under our law. . . .

Determination of the existence of "rights not readily identifiable in the Constitution's text" sometimes . . . seems merely "the imposition of the [judges'] own choice of values." Attempting "to identify the nature of the rights qualifying for heightened judicial protection," the Supreme Court has ruled "that this category includes those fundamental liberties that are 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if [they] were sacrificed.' [Alternatively,] they are characterized as those liberties that are 'deeply rooted in this Nation's history and tradition.' " . . .

. . . The "guarantee of personal privacy" has been "exten[ded] to activities relating to marriage, procreation, contraception, family relationships, and child rearing and education." [Emphasis added.]

Accord *Advisory Opinion on Constitutionality of 1975 PA 227*, 396 Mich 465, 481-482; 242 NW2d 3 (1976); Const 1963, art 1, § 17; *Mahaffey, supra*; see also *Jensen v Pontiac*, 113 Mich App 341, 346; 317 NW2d 619 (1982).

We believe that defendant's ostensible right to withhold disclosure of her HIV status from her sexual partners is not an absolute right when balanced against the state's "unqualified interest" in preserving human

life. *Hobbins, supra* at 205, quoting *Cruzan, supra* at 282. Despite the guarantee of personal privacy extended to procreation, contraception, family relationships, child rearing, and child education, we disagree that defendant's asserted right to privacy falls within any of these categories. Defendant has not supported her mere assertions that her actions implicate procreation, contraception, or family relationship issues, and we will not search for authority to support this position. See, e.g., *In re Toler*, 193 Mich App 474, 477; 484 NW2d 672 (1992). Rather, defendant's actions merely involve one individual's decision to have unfettered or unencumbered sexual relations with others. We will not read these constitutional guarantees of personal privacy so broadly as to render them meaningless. To the contrary, we defer to the state's overriding, legitimate, and compelling interest in preserving the life of its citizens, thereby permitting it to preclude defendant from remaining silent and knowingly exposing others to an incurable disease.

In *Gamberella, supra* at 603-604, the Louisiana Court of Appeals rejected a similar privacy claim where the defendant argued that the statute interfered with his right as an HIV-infected person to engage in sexual activities. The court recognized that the Louisiana Constitution, like the Michigan Constitution, guarantees every individual has the right to be secure in his person against "unreasonable searches, seizures, or invasions of privacy":

> The right of privacy is not absolute; it is qualified by other rights. *Furthermore, the right of privacy does not shield all private sexual acts from state regulation. No one can seriously doubt that the state has a compelling interest*

*in discouraging the spread of the* HIV *virus. Forcing an infected person to inform all of his sexual partners so the partner can make an informed decision prior to engaging in sexual activity furthers the state's interest in preventing the spread of the virus. . . .* [M]erely because the statute does not go as far as it could to discourage the spread of the virus does not result in the current version's being viewed as an invasion of privacy. Moreover, to the extent the statute criminalizes sexual conduct which might be incapable of spreading the virus, considering the uncertainty of the medical community concerning all aspects of this disease, the statute is narrowly drawn to further the state's compelling interest. [*Id.* at 604 (citations omitted, emphasis added).]

Although we are not bound to follow the reasoning in *Gamberella*, we agree with the conclusion that the right of privacy does not shield defendant's private sexual acts from state regulation. Michigan has an undeniable compelling interest in discouraging the spread of HIV.[8] Requiring an infected person to so inform sexual partners so they can make an informed decision before engaging in sexual penetration is narrowly tailored to further this compelling state interest. *Id.*

Defendant's right to privacy argument has been defeated not only in the context of criminal statutes relating to the transmission of AIDS but also in cases where unwitting sexual partners contracted a venereal disease and sued in tort for damages. In a tort action, *Kathleen K v Robert B*, 150 Cal App 3d 992, 996; 198 Cal Rptr 273 (1984), the defendant argued that his right of privacy would be violated if he were compelled to disclose that he had genital herpes. In

---

[8] In *Sanchez, supra* at 709, our Supreme Court recognized the "need to avoid significant health risks to the public" from the spread of AIDS.

that case, Cal Health and Safety Code 3198 made it a misdemeanor to expose any person or to infect any person with any venereal disease. Although the California Court of Appeals recognized that the government may not without warrant intrude into private matters relating to marriage, family, and sex, the court found that the right to privacy is not absolute "and in some cases is subordinate to the state's fundamental right to enact laws which promote public health, welfare and safety, even though such laws may invade the offender's right of privacy." *Kathleen K, supra* at 996.

Thus, the *Kathleen K* court recognized that the right of privacy did not insulate a person from judicial inquiry into the person's sexual relations where one sexual partner intentionally engaged in conduct that causes or could cause serious physical injury to another. *Id.* The court therefore concluded that the serious and incurable nature of the defendant's ailment, coupled with the state's interest in preventing and controlling the spread of contagious and dangerous diseases, outweighed the defendant's constitutional right of privacy, and it rejected the argument that the right to privacy insulated a defendant who either negligently or deliberately infects someone with a venereal disease. *Id.* at 996-997. Accord *Doe v Roe*, 218 Cal App 3d 1538, 1546-1547; 267 Cal Rptr 564 (1990) (the duty to disclose to his sexual partner the fact that the defendant had a sexually transmissible contagious disease arises out of a strong public policy to prevent the spread of serious and incurable diseases, and this duty, aimed at protecting the public health, safety, and welfare, was sufficient to overcome the defendant's privacy rights).

Other states have recognized similar tort causes of action and rejected the defendants' assertions that their privacy interests are superior to the risk of their spreading incurable "social" diseases. See *Mussivand v David*, 45 Ohio St 3d 314, 319; 544 NE2d 265 (1989) (there is no duty to disclose this private information to everyone); *Berner v Caldwell*, 543 So 2d 686, 688-689 (Ala, 1989) (Ala Code 22-11-21[c] made it a misdemeanor to knowingly transmit or do any act likely to transmit sexually transmitted diseases); *Maharam v Maharam*, 123 AD2d 165; 510 NYS2d 104 (1986) (NY Pub Health Law 2307 makes it a misdemeanor if you have sex with another knowing that you have a sexually transmissible disease); *Long v Adams*, 175 Ga App 538, 539-541; 333 SE2d 852 (1985); see also *Russell, supra* at 26 (finding that Illinois' criminal transmission of HIV statute does not infringe on any alleged right of intimate association where the victim did not know that his sexual partner had AIDS).

In light of the foregoing, we find that despite the constitutional guarantees of liberty that include privacy considerations, defendant's right to privacy is not absolute, and the state's overwhelming need to protect its citizens from an incurable, sexually transmissible disease is a compelling state interest. Moreover, the requirement that infected individuals disclose their status to their potential partners before engaging in sexual penetration is narrowly defined so as to further that compelling interest. The Legislature has properly balanced the privacy rights of HIV- and AIDS-infected persons against the general public's interest and need for protection from a fatal disease. *Hobbins, supra* at 205-206; *Gamberella, supra* at 603-604.

Most notably, the statute neither forbids HIV-infected persons from engaging in sexual penetration nor requires general public disclosure of the person's health status. To the contrary, MCL 333.5210; MSA 14.15(5210) simply acknowledges that an individual who contemplates sexual penetration with an HIV-infected person is entitled to make an informed decision regarding potential health and safety concerns. Thus, while the statute intrudes somewhat on the privacy of an HIV-infected individual, this intrusion is significantly outweighed by the devastating result that could ensue from unwitting participation in unprotected sexual penetration with the infected individual.

We therefore find that MCL 333.5210; MSA 14.15(5210) does not unconstitutionally deprive defendant of her right to privacy regarding the fact that she was HIV infected, and that any right to privacy involving her HIV infection is subordinate to her sexual partner's right to either avoid sexual penetration or to engage in sexual penetration only after being informed that defendant was HIV infected.

### B

With respect to defendant's allegations that the statute violates her right against compelled speech, defendant is asserting a "negative First Amendment right" or one of nonexpression. More specifically, defendant argues that MCL 333.5210; MSA 14.15(5210) violates her First Amendment rights because it compels her to disclose information about which she would otherwise wish to remain silent. The United States Supreme Court has clearly indicated that the state may sometimes curtail freedom of speech when necessary to advance a significant and

legitimate state interest. *Members of City Council of City of Los Angeles v Taxpayers for Vincent*, 466 US 789, 804; 104 S Ct 2118; 80 L Ed 2d 772 (1984). While the Supreme Court's decisions exemplify that under certain circumstances a constitutional right to be free from compelled association or expression exists, the Court has yet to completely articulate the extent of that right. *Falk v State Bar of Michigan*, 418 Mich 270, 287; 342 NW2d 504 (1983).

"However, it is clear that the Supreme Court *does not* consider the strict scrutiny applied in other First Amendment cases to be appropriate in cases involving negative First Amendment rights." *Id.*

> [I]n resolving [such] claims the Court has balanced the severity of the injury to the individual interest against the magnitude of the government interest sought to be served by the requirement or regulation. In this manner, the Court has decided whether the complained-of government action constitutes an impermissible First Amendment infringement.
>
> "Whenever a government requirement is challenged on the basis that it compels expression the initial inquiry must be whether the requirement does in fact infringe upon negative First Amendment interests and if so how seriously. The judicial task does not end here, however. It is also necessary to consider what government interests may be served by the requirement in question, and under what circumstances advancement of a government interest might outweigh the concomitant infringement of individual negative First Amendment interests." [*Id.* at 288, quoting Gaebler, *First Amendment Protection Against Government Compelled Expression and Association*, 23 BC L R 995, 1014 (1982).]

When applying these tests to the instant negative First Amendment interest, MCL 333.5210; MSA 14.15(5210) obviously requires persons to expressly

inform their sexual partners that they are HIV infected. Thus, the statute indeed infringes defendant's right against compelled expression.

Consequently, this Court must next determine the severity of the infringement of defendant's negative First Amendment interest, looking to "the intimacy of the connection between [defendant] and the compelled expression." *Falk, supra* at 289. Despite an individual's interest in avoiding disclosure of personal matters, *Whalen v Roe,* 429 US 589, 598-600; 97 S Ct 869; 51 L Ed 2d 64 (1977), "a governmental intrusion into medical matters has been permitted after a finding that the societal interest in disclosure outweighs the individual's privacy interest." *Swickard v Wayne Co Medical Examiner,* 184 Mich App 662, 667; 459 NW2d 92 (1990), aff'd 438 Mich 536; 475 NW2d 304 (1991).

Here, requiring defendant to disclose that she has a sexually communicable disease involves a very personal matter and implicates issues regarding her sexual life; thus, the expression directly relates to defendant. "[T]he more directly the compelled expression relates to the individual, the more important must be the government interest advanced to justify it." *Falk, supra* at 289. " 'The question in each case must be whether the compelled participation in expression infringes unduly upon individual interests.' " *Id.* at 292, quoting Gaebler, *supra,* at 1016.

From the plain language of MCL 333.5210; MSA 14.15(5210), it is evident that the Legislature enacted the statute to stop the spread of AIDS and HIV by punishing the carriers of these illnesses who, with their silence, spread an incurable disease. Considering the ease of transmitting AIDS and HIV through sexual pene-

tration and the absence of any "cure," the state's interest in protecting the public health, safety, and general welfare of its citizenry becomes extremely significant. Although the statute may significantly infringe defendant's individual interests in remaining silent, the state's interest to compel her to disclose that she is HIV infected before engaging in sexual penetration is undeniably overwhelming. *Falk, supra* at 292.

We reiterate that MCL 333.5210; MSA 14.15(5210) does not prohibit defendant from engaging in sexual penetration but only requires her to inform her potential sexual partners, individually and privately, that she has this communicable disease.[9] The statute does not require or imply that she need publicize the fact that she is HIV positive. It merely compels her to *privately* divulge this health status to those with whom she intends to engage in sexual penetration. Hence, we do not agree that the statute requires public disclosure; rather, it requires *private disclosure* only to those who are immediately in danger of exposure to the virus because they are contemplating the opportunity to engage in sexual penetration with defendant. See *Falk, supra* at 292.

Accordingly, in weighing the infringement of defendant's negative First Amendment right against

---

[9] Defendant's argues that if she is forced to disclose that she is HIV infected, no one will become intimate with her or will want to be her friend. This argument is constitutionally unpersuasive, statistically unproved, and, at the very least, exemplifies why full disclosure is necessary. Only those willing to risk HIV transmission, or who know how to take precautions against the virus, will accept defendant's offer of sexual contact. Should her desire to have a unlimited bank of sexual partners overcome the state's interest in ensuring that her partners are fully informed of the risks involved? We believe that the answer to this question must be emphatic: No.

compelled speech by requiring private disclosure that she is HIV infected against the magnitude of the state's interests in controlling the spread of this currently incurable disease, the state's interests outweigh defendant's right against compelled speech.

We therefore affirm the constitutionality of MCL 333.5210; MSA 14.15(5210) and defendant's convictions pursuant to the statute.